**Lowell A. BLOSSOM, Plaintiff,**

v.

**BLACKHAWK DATSUN, INC. and Carl Schneider, Defendants.**

**No. IP 85–1805–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 23, 1988.

David E. Wright, Ronald G. Sentman, Johnson, Gross, Densborn & Wright, Indianapolis, Ind., for plaintiff.

Mark D. Gerth, Kightlinger & Gray, Indianapolis, Ind., for Blackhawk Datsun, Inc.

William P. Skemp, Hale, Skemp, Hanson & Skemp, LaCrosse, Wis., for Carl Schneider.

## MEMORANDUM ENTRY AND ORDER

TINDER, District Judge.

In October, 1985, plaintiff Lowell A. Blossom entered into a contract to purchase assets from defendants Carl Schneider and Blackhawk Datsun, Inc. (Blackhawk). Among those assets was an authorized Datsun/Nissan dealership in Moline, Illinois. In accordance with the terms of the sale, Blossom deposited $125,000 in the Valley View Bank in an escrow account. Plaintiff and defendants do not appear to agree on anything that has happened since that event.

At some point after the execution of the agreement, Blossom claims to have learned of misrepresentations made by the defendants about the dealership. Blossom asserts that he would not have entered into the contract if he had known the true facts. Consequently, Blossom initiated this action alleging breach of contract, fraud and constructive fraud. Not to be outdone, defendants responded with a counterclaim alleging that Blossom was the party in breach of the contract and that Blossom had defamed Schneider and Blackhawk, substantially damaging both the business' reputation and Schneider's reputation. The defamation aspect of the counterclaim is the origin of the matter presently before the court.

This cause comes before the court upon plaintiff's request for Rule 11 Sanctions against the defendants and defendants' counsel. In an order of December 9, 1987, this court granted plaintiff's Motion to Impose Rule 11 Sanctions and set a hearing to

determine the amount of the sanction to be imposed. On January 11, 1988, defendants filed a Motion to Reconsider the Imposition of Sanctions. The court granted defendants' Motion and incorporated argument from defendants' counsel on the Motion to Reconsider into the hearing previously set on January 12, 1988, to establish the amount of the sanction. The court now partially modifies the imposition of sanctions as more fully explained in this entry. In addition, evidence was introduced and argument was heard on January 12, 1988, concerning the amount of attorney's fees and expenses associated with the defense of the defamation count and with the pursuit of Rule 11 Sanctions. The court being duly advised, hereby imposes a sanction of Seven Thousand One Hundred Ninety-one Dollars and Thirty-six Cents ($7,191.36) to be assessed Three Thousand Five Hundred Ninety-five Dollars and Sixty-eight Cents ($3,595.68) against the defendants, Blackhawk and Schneider, and Three Thousand Five Hundred Ninety-five Dollars and Sixty-eight Cents ($3,595.68) against defendants' attorney, William P. Skemp.[1] In accordance therewith the court enters the following findings of fact and conclusions of law.

### Findings of Fact

1. The counterclaim which is the subject of this ruling was filed on April 10, 1986. It contained a count sounding in defamation alleging that "[t]he counterclaimants have been damaged by demoralizing and derrogatory [sic] comments made by Blossom and his employees to employees of Blackhawk Datsun, Inc. and by comments and remarks made by Blossom to other members of the automobile retail industry." [Defendants' Counterclaim ¶ 6].

2. In anticipation of an early trial date, the parties engaged in an active discovery schedule. On or about July 1, 1986, de-

---

1. The parties will note that the sanction imposed is different than that tentatively announced in open court at the conclusion of the hearing. The difference is based upon reconsideration given this matter during preparation of this entry. The court has decided to start the period of sanctions after the time of the deposi-

tions on September 29 and 30, 1986, rather than from the July 1, 1986, answers to the interrogatories. While this lessens the reimbursement to the plaintiff and gives more benefit of the doubt to the defendants and counsel than they may deserve, the sanction appears to be appropriate in light of the conduct in this instance.

fendant Carl Schneider, submitted his responses to Plaintiff's Second Set of Interrogatories. Defendant's response to the interrogatories requesting specific information about the basis of the defamation claim was:

It is expected that depositions will develop evidence of statements made by Blossom and his employees as to demoralizing and derrogatory [sic] comments to the employees of Blackhawk Datsun, Inc. At this time the information requested is still being obtained and this answer will be supplemented when depositions are concluded.

An almost identical answer was given to the interrogatory which requested information about comments made to other members of the automobile retail industry.

3. On or about August 6, 1986, plaintiff's attorney, David E. Wright, sent a letter to William P. Skemp, defendants' attorney. In the letter, plaintiff's counsel requested that the interrogatory answers pertaining to the defamation claim be supplemented, to permit meaningful discovery with the purpose of preparing a defense to the claim. In addition, the letter provided a warning that unless a factual basis of the defamation claim was asserted or the defamation claim was dismissed, the plaintiff would seek a remedy pursuant to the provisions of Rule 11 of the Federal Rules of Civil Procedure. This letter put the defendants and their attorney on notice of possible serious ramifications of their failure to either support or dismiss the defamation claim.

4. On or about September 29, 1986, defendant Carl Schneider's deposition was taken in this cause. On September 30, 1986, Schneider was deposed in his capacity as president and majority shareholder of Blackhawk. Mr. Schneider's testimony with respect to the allegations of the counterclaim sounding in defamation was as follows:

Q Did Mr. Blossom to your knowledge communicate himself with anyone in the community with regard to Blackhawk Datsun, Inc.?

A I don't know.

Q Has anyone suggested to you that he has?

A No.

Q Has Mr. Blossom made any comments to your knowledge to anyone in the industry regarding either you or Blackhawk Datsun, Inc.?

A We are attempting to find that out.

Q As we sit here today do you know of any?

A No.

Q And I am asking you did he say anything negative about you personally?

A No.

Q Has anyone else ever suggested to you, Mr. Schneider, or to any representative of yours that Mr. Blossom has made any derogatory comments about either you personally or the Blackhawk Datsun, Inc. business?

A Not that I know of.

[Deposition of Carl Schneider, September 29, 1986, pp. 185–87.]

5. On or about December 11, 1986, plaintiff's attorney, Ronald G. Sentman, sent a letter to defendants' attorney, William P. Skemp and again requested that the responses to the interrogatories be supplemented to provide the factual basis of the defamation claim. The letter also reiterated the warning that failure to respond would necessitate a claim for Rule 11 Sanctions.

6. On or about December 19, 1986, Ronald G. Sentman sent a letter to William P. Skemp confirming a telephone conversation where Mr. Skemp advised Mr. Sentman that paragraph 6 of the counterclaim would be amended to dismiss the claim sounding in defamation. There is additional evidence in the record which indicates that Mr. Skemp made other representations that the defamation claim would be dismissed. However, he took no action consistent with those representations and, in fact, the claim remained pending.

7. On or about December 30, 1986, Mr. Sentman sent a letter to Mr. Skemp again formally demanding the dismissal of the

defamation claim and demanding the payment of reasonable attorney's fees associated with the defense of the defamation portion of the counterclaim.

8. A pre-trial conference was held before Magistrate Endsley on or about January 12, 1987, and Mr. Skemp moved to dismiss the portion of the counterclaim alleging defamation. This action came nearly a full month following Mr. Skemp's representation in December, 1986, that the claim would be dismissed.

9. The defamation claim was formally dismissed on or about January 29, 1987, with the approval of the pre-trial entry.

10. On February 5, 1987, the plaintiff filed a Motion to Impose Rule 11 Sanctions. Defendants failed to file a response in the ten months that the Motion was pending, before the court granted plaintiff's Motion in December, 1987. Further, defendants failed to file any response to the court's order imposing sanctions, until they filed a Motion to Reconsider on February 11, 1988, just one day prior to the hearing set by the court to establish the amount of the sanction to be imposed.

11. In an affidavit submitted with the defendants' Motion to Reconsider, dated January 8, 1988, and filed on January 11, 1988, the day before the hearing to determine the amount of the Rule 11 Sanction to be imposed, defendant Carl Schneider, for the first time, indicated the alleged factual basis underlying the defamation claim. Mr. Schneider said that based upon conversations with Gordon Page, Al Vella and William Wise, he believed that defamatory remarks had been made by the plaintiff, Lowell Blossom and Blossom's agents and employees to the employees of Blackhawk Datsun, Inc. and to other members of the automobile retail industry. Mr. Schneider's testimony in his affidavit comes nearly one full year after the defamation claim was dismissed. If credible, it provides the first and only indication that a factual basis existed for the defamation claim. The affidavit contradicts Schneider's deposition testimony that he had no knowledge what defamatory comments were made, if any, and to whom they were made. The affida-

vit does not disclose if the information about the three purported witnesses was communicated to Mr. Skemp, nor does it disclose when it was learned that none of the three would be able to provide relevant testimony to support the defamation claim.

12. Plaintiff's counsel submitted an affidavit of legal services provided in relation to defendants' counterclaim between April 10, 1986 and December 31, 1987. The affidavit included 262.85 hours of legal services, billed at seven different rates; five attorney rates ranging from One Hundred and Twenty-five Dollars ($125.00) an hour for the most senior attorney, to Seventy Dollars ($70.00) for a less experienced associate, a law clerk-accountant rate of Sixty Dollars ($60.00) an hour, and a courier rate of Twenty Dollars ($20.00) an hour. Plaintiff's counsel was unable to specify exactly what portion of the hours expended related to the defamation count; however, the estimate provided by plaintiff's counsel was approximately one half (1/2) of the total hours. Defendants' counsel disputed this contention and both Mr. Skemp and Mr. Gerth, local counsel in this case, estimated that a lower percentage of time could reasonably be allocated to the defamation count. Mr. Gerth submitted an affidavit in which he estimated that One Thousand Five Hundred Dollars ($1,500.00) was a fair and reasonable charge for the services rendered and the expenses incurred in conjunction with the defamation count of defendants' counterclaim. Mr. Skemp's affidavit pointed out that the defamation claim was the subject of few discovery requests in what constituted detailed interrogatories and depositions of the fact witnesses in this case.

Plaintiff's counsel concedes that some of the work performed in defense of the defamation count would have been done regardless of the existence of that claim because of the other aspects of the counterclaim.

13. Plaintiff's expert witness, Brian K. Burke, an Indianapolis attorney experienced in the type of litigation at issue in this case, testified at the January 12, 1988, hearing, that the hourly rates in this case

were fair and reasonable in the community and, in fact, might be considered low. Mr. Burke also provided an opinion on a reasonable fee in this case based upon his review of the files and pleadings in this case. Mr. Burke presented his fee estimates based upon three methods of allocating defense costs to the defamation count alone.

In the first method, Mr. Burke stated that based upon the nature of the issues presented by defendants' counterclaim and based upon a review of the work actually completed by plaintiff's counsel, attributable to the counterclaim, it is a fair and reasonable estimate that one-third (1/3) of the time allocated to the defense of the counterclaim is fairly apportioned to the defamation count. Mr. Burke testified that his review of the file indicated that the work performed was reasonable and necessary under the circumstances to attempt to prepare a defense to the defamation claim. Mr. Burke acknowledged that it was difficult to determine what work was directly attributable to the defamation claim because of the overlapping nature of some of the claims and the work associated with them. However, Mr. Burke stated that one-third (1/3) of the total defense costs associated with the counterclaim, approximately Seven Thousand Three Hundred Dollars ($7,300.00) to Seven Thousand Five Hundred Dollars ($7,500.00) was fairly allocated to the defamation claim.

The second method of allocation presented in Mr. Burke's testimony was an estimate of the defense costs which would have arisen in response to the defamation claim alone. Mr. Burke testified that because of the lack of specificity as to the nature of the claim in the pleading and the unsuccessful nature of discovery in establishing the basis of the claim, defense costs could fairly and reasonably be estimated at between Six Thousand Five Hundred Dollars ($6,500.00) to Seven Thousand Five Hundred Dollars ($7,500.00), if this claim had been pursued alone.

Mr. Burke's third method for computing a reasonable attorney fee in this case was that of taking the average hourly rate times the number of hours reasonably allocated to the defense of the defamation claim. Mr. Burke testified that in this case the average hourly rate for the plaintiff's counsel was Eighty-six Dollars and Fifty-six Cents ($86.56) and that the number of hours reasonably allocated to the defense of the counterclaim was between seventy (70) and ninety (90) hours. Therefore, according to Mr. Burke the range of the reasonable fee for the defamation claim was Six Thousand Dollars ($6,000.00) to Eight Thousand Dollars ($8,000.00).

Mr. Burke did concede that some of the work on the defamation claim overlapped work that would have been done in defense of the balance of the counterclaim.

■ The court finds Mr. Burke's testimony to be credible with respect to the reasonableness of the hourly rates and the time expended herein. In addition, the court finds that the first method of computing a reasonable attorney fee, described above, is the most appropriate to use in this instance. Therefore, the court finds that one-third of the time expended on the counterclaim was fairly attributable to the defamation count.

14. The first affidavit submitted by plaintiff's counsel contained a listing of some of the attorney's fees incurred in the pursuit of the Rule 11 Sanctions. A supplemental affidavit was also submitted which contained a complete listing of attorney's fees generated by the plaintiff's counsel in the pursuit of the Rule 11 Sanctions and the expert witness fee. The total of attorney's fees generated by plaintiff's counsel with respect to the Rule 11 claim was Two Thousand Nine Hundred Thirteen Dollars and Seventy-five Cents ($2,913.75). Plaintiff also incurred expenses for Mr. Burke's professional services of evaluating the file and rendering an opinion concerning the attorney's fees for the Rule 11 proceeding of One Thousand One Hundred and Fifty-five Dollars ($1,155.00).

15. At the January 12, 1988 hearing, Mr. Skemp testified that the allegation of fraud in the plaintiff's complaint was a sufficient factual basis for the inclusion of the defamation count in defendants' counterclaim. He also testified that Schneider

had a difficult time selling the Moline operation, which he and his client attributed to rumor and innuendo resulting from defamation by Blossom. Mr. Skemp said he felt it was his duty to raise the claim and that he believed the evidence to support the claim would develop.

16. At the January 12, 1988 hearing, Mr. Skemp testified that the substantive information which local counsel, Mr. Gerth, had about this case was provided entirely by Mr. Skemp. Mr. Skemp testified that he directed the course of this litigation and that he was responsible for the nature and substance of defendants' claims against the plaintiff.

17. Any finding of fact stated above, to the extent that it constitutes a conclusion of law, is herein incorporated by reference as an additional conclusion of law by the court.

### Conclusions of Law

1. The defamation claim filed by the defendants in this case was never factually supported during the time it was pending.

2. Mitigating factors excuse the original inclusion of the defamation count in the counterclaim. Mr. Schneider represented to his attorney, Mr. Skemp, that he was aware of defamatory comments made by Mr. Blossom to Blackhawk Datsun employees and to other members of the automobile retail industry. Consequently, there was arguably justification for pursuing the defamation claim at the time it was filed. The claim had to be filed with the answer within a limited period of time or else it would be lost. Therefore, the court reconsidered its imposition of sanctions for the filing of the claim and for its pursuit for a period of time. However, when the defendant Schneider's deposition was taken on September 29, 1986, and he testified under oath that he did not have any factual support for the defamation claim, the defendants and counsel were clearly on notice that their inquiry into the factual and legal basis for the claim was inadequate. At that point, five months after the defamation claim was filed and at the point when discovery was proceeding, it is evi-

dent that the factual basis for the claim was lacking or at the very least that defendant could not produce evidence to support it. A reasonable inquiry into the factual or legal basis had not been conducted at that stage of the proceedings.

3. The pursuit of the defamation claim after the submission of the interrogatory answers when defendants and counsel knew or should have known that there was no factual basis for the claim could be sanctionable conduct in this case, but to give them every benefit of doubt, plaintiff's counsel drove that point home in his letter of August 6, 1986, in which he said:

... Unless the interrogatory responses are fully and completely supplemented to show a factual basis for the counterclaim paragraph number 6, or in the alternative, unless paragraph number 6 of the counterclaim is withdrawn or stricken by the counter claimant we shall have no choice but to proceed to seek all remedies in connection with the Rules of Civil Procedure for nonresponsive discovery and with regard to an improper Rule 11 certification ...

Letter from David E. Wright to Wiliam P. Skemp (Aug. 6, 1986).

4. If the defendants and Mr. Skemp conducted any inquiry into the defamation claim after the August 6, 1986, letter, apparently the inquiry produced nothing, as evidenced by Mr. Schneider's answers to the questions on this subject at his deposition of September 29, 1986.

5. Neither the defendants nor Mr. Skemp supplemented the interrogatory answers of Mr. Schneider provided on July 1, 1986, or his subsequent deposition answers, at least not until Mr. Schneider's January 8, 1988 affidavit was submitted to the court in connection with the sanctions hearing.

6. The defendants and Mr. Skemp arguably failed to adequately inquire into the factual and legal basis at all times prior to the September 29, deposition, and consequently would be subject to sanctions for conduct prior to that time. Unquestionably, after Mr. Schneider admitted under oath that he had no basis for the defamation claim, the failure to supplement

the interrogatory answers and the continued maintenance of the defamation claim is sanctionable conduct.

7. Counsel for the plaintiff appropriately continued to defend against the claim after the Schneider deposition. The failure to provide any evidentiary basis for the claim, combined with the refusal to dismiss the claim, may have sent the plaintiff down more blind alleys than would normally have been confronted if the matter had been properly handled from the defendants' perspective.

Part of plaintiff's counsel's work included continued efforts to coax a dismissal from Mr. Skemp as evidenced by the letters of December 11, 1986, and December 30, 1986. Mr. Skemp represented, at least around December 19, that the count would be dismissed, but these representations appeared to be nothing more than "lulling" statements since no dismissal was forthcoming. Mr. Skemp took no affirmative action to dismiss the claim until being confronted with his representations in the presence of the magistrate at the pre-trial conference on January 12, 1987. The results of this conference were not officially entered until approved by the magistrate on January 29, 1987.

8. The period of the violation, therefore, is the period following the depositions of September 29, 1986, and September 30, 1986, until the approval of the pre-trial entry dismissing the defamation count on January 29, 1987.

9. During the period of the violation, the plaintiff was billed for 102.1 hours of legal services associated with the issues raised by the defendants' counterclaim. Those hours were billed at various rates for a total of Nine Thousand Three Hundred Sixty-seven Dollars and Eighty-four Cents ($9,367.84). The affidavit of Ronald G. Sentman, which is part of the record in this case, fully details the hours expended and the various rates charged. One-third (1/3) of that time is found to be fairly and reasonably attributed to the defamation claim. Therefore, the court awards Three Thousand One Hundred Twenty-two Dollars and Sixty-one Cents ($3,122.61) to the plaintiff for the reasonable attorney's fee associated with defending a baseless claim.

10. The defendants and defendants' counsel are also responsible for a reasonable attorney's fee and the costs associated with the pursuit of the Rule 11 Sanctions. Plaintiff's counsel generated fees of Two Thousand Nine Hundred Thirteen Dollars and Seventy-five Cents ($2,913.75) in the pursuit of Rule 11 Sanctions. The expert witness fee in this case was One Thousand One Hundred and Fifty-five Dollars ($1,155.00). These two figures along with the figure of the reasonable attorney's fee for the period of the violation comprise the total amount of the sanction to be imposed apportioned equally between the defendants and defendants' counsel in this case, namely Seven Thousand One Hundred Ninety-one Dollars and Thirty-six Cents ($7,191.36).

11. The responsibility for the continued maintenance of the defamation claim and the failure to supplement inaccurate interrogatory answers after determining that no factual basis existed for the claim falls equally upon the clients, Mr. Schneider and his corporation, Blackhawk, who may have firmly believed in the merit of the claim and upon the attorney, Mr. Skemp, who demonstrated a strong loyalty to his clients' belief. However, neither undertook adequate investigation of the factual or legal basis of the claim. Likewise, neither took appropriate action to dismiss the count once it was determined that the factual basis of the claim was lacking.

12. Mark D. Gerth was local counsel in this case. At the hearing on Rule 11 Sanctions, Mr. Skemp testified that he directed all of Mr. Gerth's actions in this case and that he (Skemp) was responsible for any violation of Rule 11 that was found to exist. Therefore, the court finds no basis for imposing sanctions on local counsel in this case and consequently, no portion of the sanction is assessed against Mr. Gerth.

13. Any conclusion of law stated above, to the extent that it constitutes a finding of fact, is herein incorporated by reference as an additional finding of fact by the court.

## Discussion

Rule 11 of the Federal Rules of Civil Procedure provides:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney or party constitutes a certificate by him that he had read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

The 1983 amendment to Rule 11 created a pre-filing investigation requirement. *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir.1987). According to the *Szabo* court, "[i]t is not permissible to file suit and use discovery as the sole means of finding out whether you have a case. Discovery fills in the details, but you must have the outline of a claim at the beginning." *Id.* at 1083. The investigation required by Rule 11 is only a reasonable investigation. The *Szabo* court noted that the "amount of investigation required by Rule 11 depends on both the time available to investigate and on the probability that more investigation will turn up important evidence; the Rule does not require steps that are not cost-justified." *Id.*

The recent case of *Brown v. Federation of State Medical Boards of the United States*, 830 F.2d 1429 (7th Cir.1987) is instructive on the issue of when Rule 11 Sanctions are to be imposed. The *Brown* court noted that Rule 11 has two grounds for sanctions. The first ground, the "frivolousness" clause, is composed of two subparts, reasonable inquiry into the facts and reasonable inquiry into the law. The second ground for imposing sanctions under Rule 11 is the "improper purpose" clause.

A violation of either subpart of the frivolousness clause is sufficient, according to the *Brown* court, to trigger the imposition of Rule 11 Sanctions. *Id.* at 1435. In determining whether there has been a reasonable inquiry into the facts and/or the law of a case the *Brown* court enumerated several factors to be considered by the District Court:

To determine whether the attorney made a reasonable inquiry into the facts of a case, a district court should consider: whether the signer of the documents had sufficient time for investigation; the extent of which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion, or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts. (citation omitted)

To determine whether the attorney in question made a reasonable inquiry into the law, the district court should consid-

er: the amount of time the attorney had to prepare the document and research the relevant law; the complexity of the legal questions involved; and whether the document was a good faith effort to extend or modify the law. *Id.*

■ The application of these factors to the case at bar indicates that there has been a violation of the Rule 11 requirement of a reasonable inquiry into the facts. The defamation claim filed by the defendant in his answer was never factually supported during the nearly nine (9) months it was pending. Mr. Skemp presented mitigating evidence at the hearing which excuses the filing of the defamation claim and its pursuit for a period of time. The answer had to be filed within a proscribed time period. At the time the answer and counterclaim was filed, Mr. Schneider asserted that he had information concerning the defamatory statements, which would provide the factual basis for the claim. However, once the defendant Schneider's deposition was taken on September 29, 1986, some five months after the counterclaim was filed, the minimal justification ended. Mr. Schneider testified under oath that he had no knowledge of the facts underlying the defamation claim, so defendants and counsel knew or should have known that there was no factual basis for the defamation claim, or at a minimum that the evidence to support the claim was not forthcoming. At that point, the maintenance of the claim was no longer compatible with the dictates of Rule 11. Rule 11 not only obligates an attorney to conduct a reasonable pre-filing investigation, but also to "review, examine, and re-evaluate his position as the facts of the case come to light." *Woodfork v. Gavin,* 105 F.R.D. 100, 104 (N.D.Miss.1985). *See also, Van Berkel v. Fox Farm and Road Machinery,* 581 F.Supp. 1248 (D.Minn. 1984). It is undisputed that Mr. Schneider firmly believed in the defamation claim as asserted. However, by the time the depositions were taken on September 29, and 30, it is evident that the factual basis for the defamation claim was lacking or at the very least that the defendants could not produce the evidence. Adequate investigation or research should have disclosed the

flaws in this claim even before the depositions. By that time, the defendants and their counsel had an obligation to dismiss the claim. It is the pursuit of the defamation count after it was clear that the underlying factual basis for the claim did not exist which is the sanctionable conduct under Rule 11. The fact that the client firmly believed in the defamation claim, does not negate the existence of a violation. As the Seventh Circuit noted in *Dries & Krump Mfg. v. Intern. Ass'n of Machinists,* 802 F.2d 247 (7th Cir.1986):

> It is human nature to crave vindication of a passionately held position even if the position lacks an objectively reasonable basis in the law. But the amended Rule 11 makes clear that he who seeks vindication in such circumstances and fails to get it must pay his opponent's reasonable attorney's fees. *Id.* at 255.

In other words: "an empty head but a pure heart is no defense" to the imposition of Rule 11 Sanctions. *Thornton v. Wahl,* 787 F.2d 1151, 1154 (7th Cir.1986).

■ The Seventh Circuit has addressed a situation similar to the one presented in this case where a theory is advanced without a sufficient factual basis. The court stated in *In re TCI, Ltd.,* 769 F.2d 441 (7th Cir.1985), that Rule 11 was designed in part to:

> ensure that each party really *does* bear the costs [of litigation] and does not foist expenses off on its adversaries. One cost of a lawsuit is research. An attorney must ascertain the facts and review the law to determine whether the facts fit within a recognized entitlement to relief. This may be a costly endeavor. Defense against a colorable claim also may be very costly. It would warp the system if a lawyer for a would-be claimant could simply file a complaint and require the adversary to do both the basic research to identify the claim and then the further work needed to craft a response. Suits are easy to file and hard to defend. *Id.* at 446. (emphasis in original).

The risk associated with pursuing the defamation claim in this case after the defend-

ants and defendants' counsel realized that there was no factual basis for the claim fell squarely upon them. In continuing to maintain the claim at that point, the defendants and counsel violated Rule 11. Therefore, a sanction is required in this case, in view of the case law which has developed in the Seventh Circuit that once a violation occurs, the imposition of a sanction by the district court is mandatory. *Brown*, 830 F.2d at 1433 (citations omitted).

It should be noted that the defendants and counsel are subject to the sanctions provided in Rule 26(g) of the Federal Rules of Civil Procedure, because of their failure to seasonably supplement obviously incorrect interrogatory responses. As early as July 1, 1986, Mr. Schneider represented in his answers to interrogatories that information on the defamation allegations was being developed, and that the interrogatory answers would be supplemented as that information developed. (Finding of Fact Number 2.) Schneider's January 8, 1988, affidavit indicates that, at some unspecified point, information surfaced regarding conversations with Gordon Page, Al Vella and William Wise which arguably supported the claim. That information was not disclosed to the plaintiff. The affidavit also discloses that, at some unspecified point, the Page, Vella and Wise information proved to be useless, leaving nothing to support the defamation claim. Likewise, that occurance was never reported to the plaintiff. On the record before this court, there is no way to determine when the developments claimed in Mr. Schneider's affidavit occurred in relation to the interrogatories and the deposition, but no sequence would eliminate the sanctionable conduct in this case. For example, if part or all of the information in the affidavit was available before the interrogatories or the depositions it should have been disclosed at that time. If the information developed after the deposition, the interrogatory answers should have been supplemented, but they never were. Counsel for the plaintiff continually maintained requests for information about the defamation claim through the formal discovery process and through conversations and correspondence. It should be noted that even the "favorable" information in the affidavit would not have been admissible evidence in support of the defamation claim. Even though the facts in this case support an award of sanctions under Rule 26(g) of the Federal Rules of Civil Procedure, the sanction in this case is not awarded pursuant to that provision. The plaintiff brought his motion for sanctions under the authority of Rule 11 of the Federal Rules of Civil Procedure. The court determined that the same conduct which would violate Rule 26(g) in this case also violates the dictates of Rule 11. Therefore, although the conduct in this case is subject to sanctions under the discovery provisions of the Federal Rules, the sanction was pursued under Rule 11 and Rule 11 is the sole basis of the award in this case.

■ Although not raised by the lawyers in this Rule 11 proceeding, the question of whether the technical requirements of Rule 11 have been met has been considered. When the answer and counterclaim was filed by the defendants in this case, Mr. Skemp did not sign the pleading. It was prepared by local counsel in Indianapolis, Mark D. Gerth, at Mr. Skemp's direction. The deadline for filing the answer and counterclaim was approaching, Mr. Skemp was in Wisconsin, and the case was pending in Indianapolis. Therefore, Mr. Skemp directed Mr. Gerth to prepare and file the answer and counterclaim, specifically directing Mr. Gerth to include the defamation claim.

Therefore, it could be argued that Mr. Skemp did not "sign" the pleading within the meaning of that term in Rule 11. However, where counsel whose name appears on a pleading fails to sign a pleading, but later comes into court and ratifies and adopts the signature of co-counsel as his own, the requirements of Rule 11 of the Federal Rules of Civil Procedure have been found to have been satisfied. *Pavlak v. Duffy*, 48 F.R.D. 396, 398 (D.Conn.1969). In this case, Mr. Skemp adopted the pleadings as his own and ratified that everything in the case was done with his full knowledge and approval. Thus, even if the

ratification and adoption of Mr. Gerth's signature are insufficient to establish a "signature" within the meaning of Rule 11, Mr. Skemp's actions in conjunction with his admission at the hearing that any violation found to exist in this case was the result of his own conduct, constitute a waiver of any objection that he did not "sign" the pleading forming the basis of this sanction. Further, although the record is not clear on how the interrogatories were submitted and signed, in the normal course of litigation, the interrogatories would be signed by the answering party, Mr. Schneider. In addition they would normally be submitted to the plaintiff by defendants' counsel, who would also sign the document, or at least the certificate of service. Fed.R.Civ.P. 26(g). Those signatures could satisfy the technical requirements of Rules 11 or 26(g). The interrogatories could have been part of the violation, because of the failure of defendants and counsel in this case to supplement the interrogatory answers as it became apparent that no factual basis existed for the claim, in disregard of their continuing obligation to do so. Fed.R.Civ.P. 26(e).

Additionally, it should be noted that Mr. Skemp arguably conducted an insufficient inquiry into the law of this case, which would also support the imposition of sanctions against him. Mr. Skemp testified at the hearing that he was justified in asserting the defamation claim in the counterclaim because the plaintiff had alleged fraud in his complaint. However, it is well-settled under Indiana law that the allegations in a pleading cannot be the basis of a defamation claim. "The prevailing rule is that judges, counsel, parties and witnesses are absolutely privileged to publish defamatory matter in the course of judicial proceedings...." *Briggs v. Clinton County Bank & Trust Co.*, 452 N.E.2d 989, 997

(Ind.App.1983).[2] Therefore, to the extent that the defendants' counsel relied on the allegations of fraud in the plaintiff's complaint as a basis for this assertion and maintenance of the defamation claim, his reliance was misplaced under controlling Indiana precedent, which was either not found or ignored by defendants' counsel.

The conduct herein violates the mandate of Rule 11 to continually evaluate the factual basis of a claim and to dismiss a suit which becomes baseless or frivolous. Consequently, a sanction must be imposed. Counsel cannot stave off an inevitable dismissal by misleading or lulling answers to interrogatories and representations to counsel that the claim would be dismissed without taking affirmative steps to dismiss it. At the point that Mr. Schneider's deposition was taken, defendants and counsel had every reason to know that the defamation claim was not supported by a reasonable inquiry into the facts, the law, or both and thus, that a sanction was warranted. The only remaining consideration is the amount of the sanction and allocation of the sanction between the offending attorney and client.

 Plaintiff's counsel presented evidence in the form of an affidavit of legal services provided in relation to the issues raised by defendants' counterclaim for the entire time it was pending. The court has determined that the period of the violation consists of the four months between the taking of the depositions on September 29 and 30, 1986, until the approval of the pre-trial entry dismissing the defamation count on January 29, 1987. The affidavit indicated that during the period of the violation, plaintiff was billed for 102.1 hours of legal services, at seven different rates; five attorney rates ranging from One Hundred and Twenty-five Dollars ($125.00) an

---

2. There is a choice of law issue which has not been resolved in this case. However, even if the court determines that Illinois law applies or that Wisconsin law applies the allegations of the pleading likewise would not create a basis for the defamation claim. *McGrew v. Heinold Commodities, Inc.*, 147 Ill.App.3d 104, 100 Ill.Dec. 446, 497 N.E.2d 424, 432 (1986) (Anything said or written in a legal proceeding is protected from defamation actions by absolute privilege); *Converters Equipment Corp. v. Condes Corp.*, 80

Wis.2d 257, 258 N.W.2d 712, 716 (1977) (In a variety of situations this court has found absolutely privileged statements made by parties, witnesses and counsel during the course of judicial or quasi-judicial proceedings). Whichever state law is ultimately determined to apply to this case, the reliance by defendants' counsel on the allegation of fraud as a basis for the defamation claim is foreclosed by controlling precedent in that state.

hour for the senior, more experienced attorney, to Seventy Dollars ($70.00) an hour, for the less experienced associate, a law clerk-accountant rate of Sixty Dollars ($60.00) an hour and a courier rate of Twenty Dollars ($20.00) an hour for a total of Nine Thousand Three Hundred Sixty-seven Dollars and Eighty-four Cents ($9,367.84). Testimony at the hearing on January 12, 1988, by an attorney expert witness, Brian K. Burke, indicated that in a case of this type it is reasonable and probable that approximately one-third (1/3) of the legal services provided in relation to the defendant's counterclaim would be allocated to the defamation claim, and that the rates charged were reasonable and perhaps low. Therefore, this court awards one-third (1/3) of the fees billed from the period of time between October 1, 1986, to January 29, 1987, or Three Thousand One Hundred Twenty-two Dollars and Sixty-one Cents ($3,122.61) to the plaintiff for the attorney's fees associated with defending a baseless claim. In addition, the plaintiff submitted a supplemental affidvait of the attorney's fees and costs associated with the pursuit of the Rule 11 Sanctions, including Two Thousand Nine Hundred Thirteen Dollars and Seventy-five Cents ($2,913.75) in attorney's fees generated by plaintiff's counsel and One Thousand One Hundred and Fifty-five Dollars ($1,155.00) in fees billed by plaintiff's expert witness, Brian K. Burke. Those two figures combined with the amount of the fees associated with defending the defamation claim comprise the total amount of the sanction to be imposed on the defendant and defendant's counsel, namely Seven Thousand One Hundred Ninety-one Dollars and Thirty-six Cents ($7,191.36) to be allocated one half to the defendants, Schneider and Blackhawk, and one half to William P. Skemp. Their blame appears to be equal; the defendants with a firm belief that they had been wronged, but with no factual basis, and the lawyer with strong loyalty to his clients' belief, but without adequate pursuit of the factual and legal basis. Both were on notice of the risks associated with pursuing the claim by plaintiff's interrogatories, by questioning in depositions, and by communications and correspondence requesting the basis of a claim or a dismissal.

In the event that the amount of the attorney's fees awarded herein would be argued by the defendants and their counsel to overcompensate the plaintiff for the legal services associated with the defense of this claim, they should consider any portion of the sanction considered excessive to be imposed in conjunction with the deterrent function of Rule 11, to discourage the pursuit of frivolous and baseless claims in federal district courts. The award of the sanction in this case is consistent with the warning initially issued by the Seventh Circuit Court of Appeals in *Dreis & Krump Mfg. v. Intern. Ass'n of Machinists*, 802 F.2d 247, 255 (7th Cir.1986) and reasserted in *Brown v. Federation of State Medical Boards*, 830 F.2d 1429, 1440 (7th Cir.1987):

> [m]ounting federal caseloads and growing public dissatisfaction with the costs and delays of litigation have made it imperative that the federal courts impose sanctions on persons and firms that abuse their right of access to these courts. The rules, whether statutory or judge-made, designed to discourage groundless litigation are being and will continue to be enforced in this circuit to the hilt....

Defendants, and defendants' counsel are ordered to pay the sanction in this case to the plaintiff within Thirty (30) days of the date of this order.