**Raymond T. PAVLAK, Plaintiff,**

v.

**Dr. Regina M. DUFFY, President, Northwestern Connecticut Community College, et al., Defendants.**

**Civ. A. No. 13436.**

United States District Court
D. Connecticut.

Dec. 19, 1969.

Elihu Berman, Ritter & Berman, Hartford, Conn., for plaintiff.

F. Michael Ahern, Asst. Atty. Gen., State of Connecticut, Hartford, Conn., for defendants.

### RULING ON DEFENDANTS' MOTION TO DISMISS

CLARIE, District Judge.

This action was brought pursuant to the Civil Rights Act, 42 U.S.C. §§ 1983, 1989, and jurisdiction is alleged under 28 U.S.C. §§ 1331, 1343 and 2201 et seq. The plaintiff represents that he was denied renewal of his public employment contract as an assistant professor at Northwestern Connecticut Community College, because of his exercise of first amendment rights. The defendants have moved, pursuant to Rule 12, Fed.R.Civ. P., to dismiss the action on several grounds: (1) the complaint is not properly signed; (2) the plaintiff is not of the class he purports to represent; (3) the action is not a true class action; (4) the plaintiff has no federally prohibited right; (5) the defendants acted within their statutory authority; (6) the state is immune from suit and the action violates the Federal Constitution and the Civil Rights Act.

The defendant Pavlak had been employed on an annual basis as a teacher from 1966 to 1969 at the Northwestern Connecticut Community College (NC CC), but had not yet acquired sufficient service to afford tenure. In January 1969, he was advised in writing by the defendant college president Regina M. Duffy, that she would not recommend him to the Board of Trustees for reappointment for the 1969–1970 academic year. The Board of Trustees, all defendants in this action, approved her recommendation and Pavlak's contract was not renewed. It is alleged that five

other teachers at the college were denied reappointment at the same time and for the same reasons as the plaintiff, namely, because they had voiced support for and attended a testimonial dinner for the previous college president, who had resigned at the request of the Board of Trustees.

Pavlak claims that the reason that his contract and those of the five other teachers were not renewed was solely because of their exercise of their first amendment rights of freedom of speech, expression and association. Further, that he had been denied due process under the fourteenth amendment to the Federal Constitution in being denied fair consideration for public employment by the arbitrary and unreasonable actions of the defendants. The plaintiff seeks permission to bring this suit as a class action and thus represent " * * * all teachers employed in the Connecticut Community College System and all other teachers, professionals, and other persons similarly situated * * *."

■ Each reason for dismissal embodied in the defendants' motion will be discussed seriatim. The first ground urges the Court to dismiss the complaint, because it was not signed by a member of the bar of this Court. However, it was signed by the plaintiff himself and by a non-member attorney of the District Court Bar. At the hearing on the current motion, the plaintiff was represented by a member of the bar of this District whose name appears on the complaint as plaintiff's co-counsel. The latter represented that he ratified and adopted the signature of the non-district co-counsel as his own. The Court finds that this satisfies the requirements of Rule 11, Fed.R.Civ.P., and Rules 2 and 4 of the Rules of Procedure (Civil Rules) of the United States District Court for the District of Connecticut.

The defendants secondly attack the propriety of the complaint in attempting to allege a proper class action, for the reasons that: (1) the plaintiff is not a member of the class he seeks to represent and (2) this is not a true class action, because the number of persons similarly situated with the plaintiff are not so numerous that they cannot be brought before the Court. The defendants' position on both grounds is well taken.

■■ A party cannot bring a class action when he is not a member of the class he purports to represent. 2 Barron & Holtzoff, Federal Practice & Procedure, § 567, at 308; 3 Moore, Federal Practice Para. 23.04. While plaintiff does not refute this rule he argues that it should not apply to this case, because the reason he is no longer a member of the class he seeks to represent is founded on the alleged illegal and unconstitutional acts of the defendants. This argument is not persuasive. The circumstance is analagous to that presented in labor cases where the rule has been stated:

"It is well established that a person who has been expelled from a union has no standing to represent a class of persons who are union members. Carroll v. Associated Musicians of Greater New York, 316 F.2d 574 (2d Cir. 1963)." Sawyers v. Grand Lodge, International Ass'n of Machinists, 279 F.Supp. 747, 757 (E.D.Mo.1967).

These cases take on added weight, when it is noted in both that the plaintiffs were expelled from their respective unions after suit had been brought, yet the Court did not allow either suit to continue as a class action.

■ Even should the plaintiff be able to overcome this impediment, he would still be foreclosed from bringing this suit as a class action. For while there may be some merit in claiming that all teachers in the Connecticut Community College System might be treated as a class, the members of that group are not in the same position as a matter of state law or regulation, as all other teachers or professionals in the state with respect to employment practices and procedures. There are at least 169 school boards in

the state, whose local policies vary greatly under state law. The similarity or dissimilarity of circumstances and interests, as they relate to those claimed by the plaintiff in this action have not been alleged. In view of the broad class it purports to encompass, it is highly unlikely that this can be demonstrated to be within the confines of this action without unduly confusing the issue.

The plaintiff is not therefore, a proper party to represent the broad interests of the class he seeks to claim. That group or class, who are in a position similar to his own, is limited to the five teachers whose contracts, it is alleged, were not renewed at the same time and for the same reasons as those relating to the plaintiff. Moreover, the size of this class is not so numerous as to require a class action. If their rights are to be litigated, they must personally join with the plaintiff as principal parties; and this would require their individual consent and the filing of a formal motion for permission to be included in the suit. Therefore, the plaintiff may elect to pursue his action individually or associate his cause with those whose contracts were similarly not renewed, provided the aforesaid prerequisites are satisfied.

■ The fourth ground for dismissal asserts that "the plaintiff has no federally protected right to the renewal of his contract of employment." This position would attempt to circumvent the plaintiff's allegation in the complaint, which simply represents that the defendants cannot act in an arbitrary and/or discriminatory manner in refusing to renew a teacher's employment contract. In this respect, the complaint does state valid grounds on which relief can be granted.

"'* * * the theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected.' Keyishian v. Board of Regents, etc., 2 Cir., 345 F.2d 236, 239. Indeed, that theory was expressly rejected in a series of decisions following *Adler* [Adler v. Board of Education, etc., 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517]. See Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216; Slochower v. Board of Education, etc., 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692; Cramp v. Board of Public Instruction, *supra* [368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285]; Baggett v. Bullitt, *supra* [377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377]; Shelton v. Tucker, *supra* [364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231]; Speiser v. Randall, *supra* [357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460]; see also Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796; Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982." Keyishian v. Board of Regents, etc., 385 U.S. 589, 605–606, 87 S.Ct. 675, 685, 17 L.Ed.2d 629 (1967). See also Pickering v. Board of Education, etc., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed. 2d 811 (1968).

In *Keyishian,* one of the plaintiffs was in essentially the same situation as Pavlak, in that he alleged that his contract was not renewed due solely to the exercise of his constitutional rights. While the *Keyishian* case did not come up under 42 U.S.C. § 1983, that section has been employed on numerous occasions in the vindication of similar rights.

"Even though the individual plaintiffs did not yet have tenure, the Civil Rights Act of 1871 (42 U.S.C. § 1983) gives them a remedy if their contracts were not renewed because of their exercise of constitutional rights. Johnson v. Branch, 364 F.2d 177 (4th Cir. 1966), certiorari denied, 385 U.S. 1003, 87 S.Ct. 706, 17 L.Ed.2d 542; Bomar v. Keyes, 162 F.2d 136 (2d Cir. 1947), certiorari denied, 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400; Smith v. Board of Education of Morrillton [Morrilton] School District No. 32, 365 F.2d 770 (8th Cir. 1966); Rack-

ley v. School District No. 5, Orangeburg County, S. C., 258 F.Supp. 676 (D.S.C.1966); Williams v. Sumter School District No. 2, 255 F.Supp. 397 (D.S.C.1966)." McLaughlin v. Tilendis, 398 F.2d 287, 289 (7th Cir. 1968).

In perhaps the most recent decision in this area, Pred v. Board of Public Instruction, etc., (5th Cir., decided Sept. 9, 1969), 415 F.2d 851 a case practically on all fours with the case at bar, the Court stated:

"(T)his complaint is a direct, positive charge that these two teachers, who would otherwise have attained the coveted tenure, were denied the fourth year 'continuing contract' solely because of their activities in supporting by word, deed, action and association ideas and lawful movements that were opposed by the State school authorities. That reduces the case to simple but awesome terms: apart from difficulties or deficiency in proof—in light of the discretion that is essential for school officials to have in teacher selection—may the State constitutionally deny a state-created status because of First Amendment activities of the applicant?

"Of course, the stock reflex to this question—there is no 'right' to public employment, and here no 'right' to a merit-based 'continuing contract'—has for over a decade been rejected time and time again. 'To state that a person does not have a constitutional right to government employment is only to say that he must comply with reasonable, lawful, and nondiscriminatory terms laid down by the proper authorities. * * *' Slochower v. Board, of Education, etc., 1956, 350 U.S. 551, 555, 76 S.Ct. 637, 100 L.Ed. 692, 698."

Plaintiff having thus alleged the infringement of a federally protected right, defendants' fourth ground for dismissal must fail.

■■ Defendants' fifth point is that the complaint should be dismissed, because at all times they acted within their statutory authority under § 10–38c of the Connecticut General Statutes. While that action affords the Court wide discretion to dismiss on those grounds, it would be required to assume that the factual allegations in the complaint are ill-founded. However, on a motion to dismiss, the allegations must be assumed to be true. Thus a question of fact emerges which can only be resolved by a trial.

"It would nullify the whole purpose of the civil rights statutes to permit all government officers to resort to the doctrine of official immunity. The statutory condition of defendant's acting 'under color' of state or territorial law contemplates that he act in an official capacity. To the extent that state or municipal officers * * * violate or conspire to violate constitutional and federal rights, the Civil Rights Law, §§ 1979 and 1980(3), 42 U.S.C. §§ 1983 and 1985(3), abrogate the doctrine of official immunity." Birnbaum v. Trussell, 347 F.2d 86, 88–89 (2d Cir. 1965).

See also Johnson v. Branch, 364 F.2d 177, 180 (4th Cir. 1966), where the Court stated:

"However wide the discretion of School Boards, it cannot be exercised so as to arbitrarily deprive persons of their constitutional rights. Zimmerman v. Board of Education, 38 N.J. 65, 183 A.2d 25, 27–28 (1962); Garner v. Board of Public Works, 341 U.S. 716, 725, 71 S.Ct. 909, 95 L.Ed. 1317 (1951)."

Defendants' final ground for dismissal asserts that the complaint in naming officials of the State of Connecticut in their official capacities, is tantamount to suing the state itself; and that as such, the suit cannot be maintained under the Eleventh Amendment or under 42 U.S.C. § 1983.

While the Eleventh Amendment on its face bars unconsented to suits against a state by non-citizens thereof, it has been interpreted to encompass suits brought by state citizens as well, Parden v. Terminal Ry. Co., 377 U.S. 184, 186, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), thus bringing at least one phase of this action within its ambit. In Whitner v. Davis, 410 F.2d 24, 30 (9th Cir. 1969), the Court was faced with a similar Eleventh Amendment question which it resolved as follows:

"Defendants also rely upon the Eleventh Amendment in urging that the district court did not have jurisdiction over the board of trustees, the president of the College or the Attorney General of the state. The argument here, in effect, is that this is in actuality a suit against the State of Washington and therefore the state's immunity provides a protective umbrella for the board and the personal defendants as pro forma parties.

"Under some circumstances, a suit may be held to be one against a state even if the state is not named as a defendant. See In re Ayers, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216. However, we do not regard plaintiff's claim against the board of trustees, the president of the College, and the Attorney General as an effort on her part to give the federal court personal jurisdiction over the state. As we view it, plaintiff's reference to the board of trustees is intended only as a means of making collective reference to the individual trustees, each of whom is named a defendant."

"Individuals, sued in their capacity as trustees of a state agency, are not protected by the Eleventh Amendment any more than the agency itself is protected by that Amendment. Moreover, the allegations and prayer of plaintiff's complaint make it clear that this is not intended to be exclusively a suit against the State of Washington. Plaintiff seeks monetary damages and unspecified equitable relief against the personal defendants as individuals as well as in their capacities as president and trustees of the College or Attorney General of the state."

In *Whitner*, the plaintiff was not attempting to sue the state, partly due to the fact that all parties there were sued both individually and in their official capacities. This is not the case. While President Duffy is sued both individually and in her official capacity as president of the college, the Board of Trustees are individually named but specifically sued only in their official capacities. The Court has no alternative but to interpret this portion of the complaint as an unlawful attempt to sue the sovereign state in violation of the Eleventh Amendment. Therefore, the complaint is dismissed insofar as it applies to the members of the Board of Trustees exclusively in their official capacity.

A suit under 42 U.S.C. § 1983 must be against a person. A state is not a person for the purposes of this statute. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Serrano v. People of the State of California, 361 F.2d 474 (9th Cir. 1966). The complaint as it now stands, naming President Duffy both individually and in her official capacity, satisfies this requirement. This problem would not arise if the Board of Trustees had been similarly joined, both individually and in their official capacities.

For the foregoing reasons, the motion to dismiss the complaint against the Board of Trustees solely, in their official capacity, is granted; and the action is dismissed against them, without prejudice. The motion to dismiss against President Duffy is denied. So ordered.