962 P.2d 353

Steven Philip GOLD and Scott Howard Whitney, Plaintiffs–Appellants,

v.

George HARRISON, Gannett Pacific Corporation, dba The Honolulu Advertiser, and Edwin Tanji, Defendants–Appellees.

No. 20468.

Supreme Court of Hawai'i.

July 8, 1998.

Edward D. Magauran, Honolulu, and William H. Pickett, on the briefs, for plaintiffs-appellants.

Paul Alston, Susan Jameson and Marilyn Chung Ushijima of Alston Hunt Floyd & Ing, on the briefs, Honolulu, for defendant-appellee George Harrison.

Jeffrey S. Portnoy and Peter W. Olson of Cades Schutte Fleming & Wright, on the briefs, Honolulu, for defendants-appellees Gannett Pacific Corporation dba The Honolulu Advertiser and Edwin Tanji.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

This case arises out of statements made by defendant-appellee George Harrison to defendant-appellee Edwin Tanji, a reporter for defendant-appellee *The Honolulu Advertiser* (*The Advertiser*), during a trial involving Harrison's property on Maui that established an easement over Harrison's property in favor of his neighbors, including, *inter alia,* plaintiffs-appellants Steven Philip Gold and Scott Howard Whitney (collectively, the Plaintiffs).

During trial, an article in *The Advertiser* quoted Harrison as saying, "Have you ever been raped? I'm being raped by all these people.... My privacy is being violated. The whole issue is my privacy." The Plaintiffs thereafter filed a twelve-count complaint against Harrison, *The Advertiser,* and Tanji in the Second Circuit Court, alleging oral defamation, false light/invasion of privacy, intentional infliction of emotional distress, written defamation, and negligence.

After Harrison, *The Advertiser,* and Tanji prevailed on motions for summary judgment, the circuit court entered final judgment against the Plaintiffs. In addition, the circuit court awarded Harrison attorneys' fees pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 11, to be paid by the Plaintiffs' counsel, William H. Pickett.

On appeal, the Plaintiffs raise the following as points of error: (1) the circuit court erred when it granted summary judgment in favor of Harrison, *The Advertiser*, and Tanji because there was a genuine issue of material fact as to whether Harrison's statements were false and defamatory; (2) the circuit court abused its discretion when it imposed HRCP Rule 11 sanctions against Pickett; and (3) the circuit court abused its discretion and denied Pickett due process of law when it failed to hold an evidentiary hearing on the HRCP Rule 11 sanctions.

Harrison contends that the Plaintiffs' appeal is frivolous and that he should be awarded attorneys' fees and costs pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 38.

We affirm: (1) the final judgment; (2) the circuit court order granting *The Advertiser* and Tanji's motions for summary judgment; and (3) the circuit court order granting Harrison's motion for summary judgment and HRCP Rule 11 sanctions. We also grant Harrison's request for attorneys' fees and costs pursuant to HRAP Rule 38.

## I. BACKGROUND

### A. THE EVENTS LEADING TO THIS LITIGATION

The Plaintiffs claim that they were defamed in an article entitled "Ex–Beatle says of trial on Maui: Don't rob my privacy, no, no, no," published in *The Honolulu Advertiser* on July 21, 1993. In the article, Harrison was quoted as saying: "Have you ever been raped? I'm being raped by all these people. . . . My privacy is being violated. The whole issue is my privacy" (Harrison's Statement).

The article was written by Tanji and concerned litigation in the Second Circuit Court involving Harrison's property in Nāhiku, Maui (the Easement Action). In the Easement Action, the Plaintiffs sought to establish that they and other neighboring property owners owned an easement over Harrison's land. Harrison opposed their claim and tes-

tified regarding, *inter alia,* his need for privacy. Harrison's Statement was made after the circuit court ruled that an easement existed over Harrison's land in favor of the Plaintiffs and other neighboring property owners. The trial continued on to determine the exact location of the easement. The Plaintiffs were not named in the article.

### B. THE PLAINTIFFS' FEDERAL COURT ACTION

On August 11, 1993, the Plaintiffs filed suit in the United States District Court for the District of Hawai'i, alleging claims of defamation, false light/invasion of privacy, and punitive and exemplary damages against Harrison (the Federal Action). Pickett was lead counsel in the case.[1]

On October 5, 1993, Pickett received a fax from local Hawai'i counsel informing him that, at an interview with other reporters who were present at the time Harrison's Statement was made to the press, the other reporters had suggested that Harrison's Statement was intended to be directed at the press or the media, rather than at the neighboring property owners, including the Plaintiffs, who had prevailed in the Easement Action against Harrison. This raised the possibility of a claim of defamation against *The Advertiser* and Tanji, which would have destroyed diversity jurisdiction.

On October 6, 1993, the Plaintiffs voluntarily dismissed the Federal Action without prejudice.

### C. THE PLAINTIFFS' CIRCUIT COURT ACTION

On July 19, 1995, the Plaintiffs filed a civil complaint in the Second Circuit Court. Two days later, the Plaintiffs filed a first amended complaint. The Plaintiffs alleged claims of oral defamation, false light/invasion of privacy, intentional infliction of emotional distress, written defamation, and negligence. Harri-

---

1. Pickett is an attorney licensed to practice law in the state of Missouri and practices in Kansas City, Mo. Pickett was originally retained by the Plaintiffs as their attorney in the Easement Action.

son, *The Advertiser*, and Tanji were named as defendants.[2]

On August 11, 1995, *The Advertiser*, and Tanji filed a motion to dismiss, arguing that Harrison's Statement was not false and defamatory because, as "rhetorical hyperbole," it was constitutionally protected speech under the first amendment to the United States Constitution. *The Advertiser* and Tanji's motion to dismiss was based on HRCP Rule 12(b)(6), but because the circuit court considered evidence outside the pleadings, specifically, the full text of the newspaper article, the circuit court treated the motion to dismiss as a motion for summary judgment pursuant to HRCP Rule 56.[3]

In response, the Plaintiffs argued that the motion should be denied because the published newspaper article distorted Harrison's actual words. The Plaintiffs argued that Harrison's Statement was actually directed at the media and that the Article distorted Harrison's Statement so that it appeared—falsely—that the Plaintiffs were the "rapists" that Harrison was complaining about. After a hearing, the circuit court granted the motion for summary judgment on October 17, 1995.

On February 6, 1996, the circuit court filed a notice of dismissal, stating that it would dismiss the case because Harrison had not been served with the complaint. The Plaintiffs opposed the notice of dismissal. The circuit court withdrew the notice of dismissal in an order filed February 20, 1996, on the condition that the Plaintiffs serve Harrison with the complaint on or before May 17, 1996.

On May 16, 1996, Harrison was served by a private process server, Jason Tierney, who left the summons and accompanying pleadings with Harrison's adult brother at Harrison's home in Great Britain.[4]

On July 1, 1996, Harrison filed a motion to dismiss, seeking: (1) to dismiss the Plaintiffs' first amended complaint, contending that Harrison's Statement was not false and defamatory, because as rhetorical hyperbole, it was constitutionally protected speech; and (2) HRCP Rule 11 sanctions and/or attorneys' fees against Pickett. Harrison's motion to dismiss was based on HRCP Rule 12(b)(6), but because the circuit court considered evidence outside the pleadings, specifically, the full text of the newspaper article, the circuit court treated the motion to dismiss as a motion for summary judgment pursuant to HRCP Rule 56.[5]

On September 11, 1996, after a hearing, the circuit court orally granted Harrison's motion for summary judgment and HRCP Rule 11 sanctions.

On November 12, 1996, Pickett submitted to the circuit court an *ex parte* motion for an evidentiary hearing to determine whether HRCP Rule 11 sanctions should have been awarded, and whether the amount of sanctions ordered to be paid were just and reasonable. In the affidavit in support of his *ex parte* motion, Pickett stated that "[a]ll actions with respect to the filing and prosecution of this case ... were taken by me and my firm, as lead counsel for Plaintiffs." The circuit court denied Pickett's *ex parte* motion for an evidentiary hearing and returned the

2. Although Pickett's name appeared in the complaint as an attorney for the Plaintiffs, local counsel signed the complaint. Local counsel in the circuit court action was different from local counsel in the Federal Action. Pickett was admitted to practice *pro hac vice* in this case a month later, in an order filed by the circuit court, on September 25, 1995.

3. HRCP Rule 12(b) provides in pertinent part:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in [HRCP] Rule 56,

and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by [HRCP] Rule 56.

4. Harrison argues that he was not properly served because (1) he was not served according to the applicable international law, and (2) his brother was "touch served," i.e., Tierney touched Harrison's brother's hands with the complaint and let it drop to the ground. In light of our disposition in this case, we need not reach the issue of whether Harrison was properly served with the complaint. *See infra* note 7.

5. *See supra* note 3. Hereinafter, Harrison, *The Advertiser*, and Tanji's motions to dismiss will be referred to as motions for summary judgment.

motion to Pickett unsigned. Pickett filed the unsigned *ex parte* motion in the circuit court record on November 27, 1996.

On November 14, 1996, the circuit court filed an order granting summary judgment in favor of Harrison and awarding HRCP Rule 11 sanctions in favor of Harrison against Pickett (the Harrison Order).

In the Harrison Order, the circuit court ruled that the first amended complaint should be dismissed for three independent reasons:

> First, *the allegedly defamatory statements attributed to Defendant Harrison are non-defamatory constitutionally protected rhetorical hyperbole; there is no good faith allegation or contention that the allegation of "rape" was anything more than colorful non-factual figurative speech, regardless of the identity of the persons at whom the remarks were targeted.* Second, the Plaintiffs previously sought to validate their claim in this case against Defendants [*The Advertiser*] and Edwin Tanji on the basis that they distorted Defendant Harrison's statements to make it appear, falsely, that Defendant Harrison was disparaging the Plaintiffs when, in fact, he was disparaging overly zealous members of the news media. Having sought to hold [*The Advertiser*] and Tanji liable on that factual premise— which is inconsistent with imposing liability on Defendant Harrison—Plaintiffs are now estopped, under *Rosa v. CWJ Contractors, Ltd.,* 4 Haw.App. 210, 664 P.2d 745 (1983) from arguing that Defendant Harrison defamed them or placed them in a false light. Third, pursuant to this court's February 20, 1996 Order Withdrawing Notice of Dismissal, Plaintiffs were required to make proper service on Defendant Harrison on or before May 17, 1996. Plaintiffs have failed to prove that service was made within that deadline in a manner consistent with the requirements of the Hague Service Convention.

(Emphasis added.)

The circuit court also assessed sanctions against Pickett pursuant to HRCP Rule 11, stating:

> For the reasons set forth above *the claim against Defendant Harrison was not well grounded in fact or warranted by either existing law or a good faith argument for the extension, modification[,] or reversal of existing law. Indeed, Plaintiffs did not urge any change in the law; instead, they sought to ignore controlling precedent and to misapply prevailing constitutional doctrine. It should not have been necessary for Defendant Harrison to bring this motion or otherwise defend himself in this action. Plaintiffs have offered no plausible argument for imposing liability on Defendant Harrison under existing law or under any new legal theory which has any chance of success.* This conclusion is reinforced by (1) the Plaintiffs' failure to explain why Defendant Harrison's statements were not constitutionally protected hyperbole, (2) the Plaintiffs' dismissal of their prior federal action against Harrison[,] and (3) by the court's ruling in favor of Defendants [*The Advertiser*] and Tanji and by Plaintiffs' prior inconsistent arguments concerning the intended target of the statements attributed to Defendant Harrison.

(Emphasis added.)

The circuit court required Pickett to pay Harrison's attorneys' fees and costs, in the amount of $12,504.48, as the HRCP Rule 11 sanction.

On January 10, 1997, final judgment was entered against the Plaintiffs in favor of Harrison, *The Advertiser,* and Tanji. The Plaintiffs' timely appeal followed.

## II. *STANDARDS OF REVIEW*

■ The Plaintiffs argue that the circuit court erred when it granted Harrison, *The Advertiser,* and Tanji's motions for summary judgment. This court discussed the review of an award of summary judgment in *Budget Rent–A–Car Systems v. Ricardo,* 85 Hawai'i 243, 942 P.2d 507 (1997).

> Under the Hawai'i Rules of Civil Procedure (HRCP), summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving par-

100

ty is entitled to a judgment as a matter of law." HRCP Rule 56 (1993). The evidence should be viewed in the light most favorable to the non-moving party. *Maguire v. Hilton Hotels Corp.*, 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995). On appeal, an order of summary judgment is reviewed de novo under the same standard. *Harris v. DeSoto*, 80 Hawai'i 425, 431, 911 P.2d 60, 66 (1996).

*Id.* at 244, 942 P.2d at 508.

■ "A trial court's findings of fact are reviewed to see if they are clearly erroneous[.]" *Furukawa v. Honolulu Zoological Society*, 85 Hawai'i 7, 12, 936 P.2d 643, 648, *reconsideration denied*, 85 Hawai'i 196, 940 P.2d 403 (1997) (citing *Hirono v. Peabody*, 81 Hawai'i 230, 232, 915 P.2d 704, 706 (1996)). "A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." *Aickin v. Ocean View Inv. Co., Inc.*, 84 Hawai'i 447, 453, 935 P.2d 992, 998 (1997) (quoting *Dan v. State*, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994)).

■ "[C]onclusions of law are reviewed under the right/wrong standard." *Furukawa*, 85 Hawai'i at 12, 936 P.2d at 648 (citing *Peabody*, 81 Hawai'i at 232, 915 P.2d at 706). Under the *de novo* or right/wrong standard, this court "examine[s] the facts and answer the question without being required to give any weight to the trial court's answer to it." *Aickin*, 84 Hawai'i at 453, 935 P.2d at 998 (ellipsis and citations omitted). "[A] conclusion of law is not binding upon the appellate court and is freely reviewable for its correctness." *Tabieros v. Clark Equipment Co.*, 85 Hawai'i 336, 350, 944 P.2d 1279, 1293 (1997) (citations and internal quotation marks omitted).

■ "All aspects of a HRCP Rule 11 determination should be reviewed under the abuse of discretion standard." *Lepere v. United Public Workers, Local 646, AFL–CIO*, 77 Hawai'i 471, 473, 887 P.2d 1029, 1031 (1995) (quoting *In re Tax Appeal of Hawaiian Flour Mills*, 76 Hawai'i 1, 15, 868 P.2d 419, 433 (1994)); *see also Enos v. Pacific*

*Transfer & Warehouse, Inc.*, 79 Hawai'i 452, 459 n. 7, 903 P.2d 1273, 1280 n. 7, *reconsideration denied*, 80 Hawai'i 187, 907 P.2d 773 (1995) (an award of HRCP Rule 11 sanctions is reviewed for abuse of discretion). "An abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State ex rel. Bronster v. United States Steel Corp.*, 82 Hawai'i 32, 54, 919 P.2d 294, 316 (1996) (citations and internal quotation marks omitted).

### III. *DISCUSSION*

### A. *THE CIRCUIT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF HARRISON, THE ADVERTISER, AND TANJI.*

The Plaintiffs contend that the circuit court erred when it granted Harrison, *The Advertiser*, and Tanji's motions. Specifically, the Plaintiffs argue that there was a genuine issue of material fact as to whether Harrison's Statement was false and defamatory. We disagree.

■ This court discussed the elements of defamation in *Dunlea v. Dappen*, 83 Hawai'i 28, 924 P.2d 196 (1996).

> In order to sustain a claim for defamation, a plaintiff must establish the following four elements:
>
> (a) a false and defamatory statement concerning another;
>
> (b) an unprivileged publication to a third party;
>
> (c) fault amounting at least to negligence on the part of the publisher [actual malice where the plaintiff is a public figure]; and
>
> (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Id.* at 36, 924 P.2d at 204 (brackets in original) (quoting *Beamer v. Nishiki*, 66 Haw. 572, 578–79, 670 P.2d 1264, 1271 (1983) (quoting Restatement (Second) of Torts § 558 (1977))).

■ The threshold issue in defamation cases is whether, as a matter of law, the statements at issue are reasonably susceptible of a defamatory meaning. *Fernandes v. Tenbruggencate*, 65 Haw. 226, 228, 649 P.2d 1144, 1147 (1982). "Where the court finds that the statements are not susceptible to the meaning ascribed to it by [the] plaintiff[s], the case should not be sent to the jury." *Id.* at n. 1, 649 P.2d at 1147 n. 1 (citing Restatement (Second) of Torts § 614, cmt. (b); *Kernick v. Dardanell Press*, 428 Pa. 288, 236 A.2d 191 (1967)). Additionally, the United States Supreme Court has "recognized constitutional limits on the type of speech which may be the subject of state defamation actions." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 16, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990).

■ Hawai'i appellate courts have not established a standard for determining whether the statements in a defamation case are false and defamatory. The Ninth Circuit, in interpreting *Milkovich*, developed a three-part test for determining whether a statement was false and defamatory:

(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact[;] (2) *whether the defendant used figurative or hyperbolic language that negates that impression* [;] and (3) whether the statement in question is susceptible of being proved true or false.

*Fasi v. Gannett Co., Inc.*, 930 F.Supp. 1403, 1409 (D.Hawai'i 1995), *aff'd*, 114 F.3d 1194 (9th Cir.), *cert. denied*, — U.S. —, 118 S.Ct. 302, 139 L.Ed.2d 233 (1997) (quotation marks omitted) (emphasis added) (quoting *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir.1995)); *see also Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir.1990), *cert. denied*, 499 U.S. 961, 111 S.Ct. 1586, 113 L.Ed.2d 650 (1991).

■ We adopt the three-part test as set forth by the Ninth Circuit to determine whether a statement is false and defamatory under the first amendment to the United States Constitution and article I, section 4 of the Hawai'i Constitution. Examining Harrison's Statement using the Ninth Circuit's three-part test, we reach the same conclusion

as the circuit court, that Harrison's Statement was not false and defamatory, but rhetorical hyperbole—figurative or hyperbolic language that would negate the impression that Harrison was asserting an objective fact about the Plaintiffs.

The U.S. Supreme Court first discussed rhetorical hyperbole in *Greenbelt Cooperative Publishing Association v. Bresler*, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970). In *Bresler*, Bresler was a prominent real estate developer attempting to secure zoning variances on land he owned while the Greenbelt City Council was attempting to acquire other land that Bresler owned for a school. *Id.* at 7, 90 S.Ct. 1537. At several city council meetings, various citizens characterized Bresler's actions in negotiating as "blackmail," and this was reported in the local newspaper. *Id.* at 7–8, 90 S.Ct. 1537. Bresler filed a suit for libel against the local newspaper, arguing that its articles had imputed to him the crime of blackmail. *Id.* at 8, 90 S.Ct. 1537. In rejecting Bresler's claim for libel, the Court stated:

It is simply impossible to believe that a reader who reached the word "blackmail" in either article would not have understood exactly what was meant: it was Bresler's public and wholly legal negotiating proposals that were being criticized. No reader could have thought that either the speakers at the meeting or the newspaper articles reporting their words were charging Bresler with the commission of a criminal offense. *On the contrary, even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered Bresler's negotiating position extremely unreasonable.* Indeed, the record is completely devoid of evidence that anyone in the city of Greenbelt or anywhere else though Bresler had been charged with a crime.

*Id.* at 14, 90 S.Ct. 1537 (emphasis added) (footnoted omitted).

Following *Bresler*, the Court rejected another libel claim on the grounds that the words sued upon were non-actionable rhetorical hyperbole in *Old Dominion Branch No.*

*496, National Association of Letter Carriers, AFL–CIO v. Austin,* 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974) (*Letter Carriers* ). In *Letter Carriers,* the Court held that a union newsletter calling plaintiffs who worked during a strike "traitors" was not libelous, because it was "similarly impossible to believe that any reader" reasonably would have understood the newsletter as accusing the plaintiffs of treason. *Id.* at 285, 94 S.Ct. 2770.

In the decades since *Bresler* and *Letter Carriers,* the Court has counseled that the judiciary must remain "particularly vigilant to ensure that individual expressions of ideas remain free from governmentally imposed sanctions." *Hustler Magazine v. Falwell,* 485 U.S. 46, 51, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988) (rejecting emotional distress claim arising out of a parody cartoon depicting Rev. Jerry Falwell because cartoon could not have reasonably been interpreted as stating actual facts about Rev. Falwell).

Most recently, in *Milkovich,* the Court reaffirmed the absolute protection for expressions that, in context, cannot be interpreted as statements of fact.

> [T]he *Bresler—Letter Carriers—Falwell* line of cases provides protection for statements that cannot "reasonably [be] interpreted as stating actual facts" about an individual. *Falwell,* 485 U.S. at 50, 108 S.Ct. 876. This provides assurance that public debate will not suffer for lack of "imaginative expression" or the "rhetorical hyperbole" which has traditionally added much to the disclosure of our Nation.

*Milkovich,* 497 U.S. at 20, 110 S.Ct. 2695 (citation omitted). *See also Fasi,* 930 F.Supp. at 1410 (use of "Blackmail incorporated," "Frank 'The Extortionist' Fasi," and "legalized blackmail" to describe Honolulu Mayor Frank Fasi was "rhetorical hyperbole" and "imaginative expression" protected by the first amendment); *Partington,* 56 F.3d at 1157 ("rhetorical hyperbole" and "im-

aginative expression" enlivens writers' prose and is protected by the first amendment).

The case at bar falls squarely within the *Bresler—Letter Carriers—Falwell* line of cases. Harrison's Statement related to the Easement Action regarding the existence of an easement across Harrison's property. Harrison's Statement was an expression of his frustration over the circuit court's decision in the Easement Action, apparently prompted by his belief that the decision would compromise his privacy. Even the most casual reader would understand that "these people"—whether neighbors of Harrison or persistent journalists—were not actually raping Harrison. Because Harrison's Statement could not have reasonably been interpreted as stating actual facts about the Plaintiffs, i.e., that they were rapists, Harrison's Statement was rhetorical hyperbole and protected by the first amendment. *Milkovich,* 497 U.S. at 20, 110 S.Ct. 2695, *Falwell,* 485 U.S. at 50, 108 S.Ct. 876, *Letter Carriers,* 418 U.S. at 285–86, 94 S.Ct. 2770; *Bresler,* 398 U.S. at 14–15, 90 S.Ct. 1537.[6]

The Plaintiffs argue that Harrison's Statement was not rhetorical hyperbole, but an opinion, and cite *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991), for the proposition that opinion is not protected speech under the first amendment. In *Masson,* the Court held that whether Masson's statement, published in a magazine article, that he believed his supervisor thought of him as an "intellectual gigolo" was defamatory was a question of law. *Id.* at 522, 111 S.Ct. 2419. However, the Plaintiffs have misinterpreted the holding of *Masson.*

In *Masson,* the Court analyzed Masson's statement as if the magazine had reported that Masson's supervisor had stated that he thought Masson was an "intellectual gigolo." Although the term "intellectual gigolo" utilized colorful, descriptive language, the imputation of intellectual dishonesty, within the context of the case, was defamato-

---

**6.** Cases in other jurisdictions have also held that the use of the word "rape" or "rapist" was rhetorical hyperbole. *Reddick v. Craig,* 719 P.2d 340, 344–45 (Colo.Ct.App.1985) (use of word "rapist," read in context, was meant to express opinion that county taxpayers were not getting their money's worth); *Karnell v. Campbell,* 206 N.J.Super. 81, 501 A.2d 1029, 1034 (App.Div. 1985) (reader of letter in which author claimed she was "raped" by a town's re-zoning decision would understand that she was not accusing the plaintiffs of the crime of rape).

ry in itself and therefore not mere rhetorical hyperbole. The essence of the statement was that Masson's supervisor believed Masson to be an "intellectual gigolo," i.e., "someone who forsakes intellectual integrity in exchange for pecuniary or other gain." *Id.* at 522, 111 S.Ct. 2419. There was a question of law as to whether Masson's statement was defamatory because the sentiments expressed in it were themselves defamatory, not because the statement constituted an opinion. The Court in *Masson* held that defamatory opinion is not protected speech and *not* that all opinion is unprotected speech.

This case is clearly distinguishable from *Masson.* The gist of Harrison's Statement was to express Harrison's negative opinion about the result in the Easement Action and to state that he felt his privacy was being violated; however, the substance of Harrison's Statement was not defamatory. Although Harrison's Statement reflected his opinion, it could not be construed as a statement that Harrison believed the Plaintiffs were, in fact, rapists, but was clearly rhetorical hyperbole expressing Harrison's feelings about the Easement Action. As Harrison's Statement was not a defamatory opinion about the Plaintiffs, *Masson* does not apply.

▆▆▆ Accordingly, because Harrison's Statement was rhetorical hyperbole, it was protected by the first amendment and was not a false and defamatory statement concerning the Plaintiffs. The Plaintiffs' claims of defamation against Harrison, *The Advertiser,* and Tanji all must fail. The Plaintiffs' claims of false light/invasion of privacy, punitive/exemplary damages, intentional infliction of emotional distress, and negligence were all derivative claims based on the Plaintiffs' claim that Harrison's Statement was defamatory, and, as Harrison's Statement was not

defamatory, these claims must also fail. We affirm: (1) the final judgment; (2) the circuit court's orders granting *The Advertiser* and Tanji's motions for summary judgment; and (3) the Harrison Order, to the extent that it grants Harrison's motion for summary judgment.[7]

## B. THE CIRCUIT COURT DID NOT ABUSE ITS DISCRETION WHEN IT IMPOSED HRCP RULE 11 SANCTIONS ON PICKETT.

The Plaintiffs next contend that the circuit court abused its discretion when, in the Harrison Order, it required Pickett to pay Harrison's attorneys' fees and costs in the amount of $12,504.48 as HRCP Rule 11 sanctions. We disagree.

▆▆▆ At the outset, we examine whether we have jurisdiction to consider the appeal of the HRCP Rule 11 sanctions. "A well-settled rule is that 'only parties to a lawsuit may appeal an adverse judgment.'" *Stewart Properties, Inc. v. Brennan,* 8 Haw.App. 431, 433, 807 P.2d 606, 607 (1991) (quoting *Marino v. Ortiz,* 484 U.S. 301, 303, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988) (per curiam)) (ellipsis and brackets omitted). HRAP Rule 3(c) provides: "The notice of appeal shall specify the party or parties taking the appeal[.]" In *Stewart Properties,* the Intermediate Court of Appeals based its interpretation of HRAP Rule 3(c) on the United States Supreme Court's construction of Federal Rules of Appellate Procedure (FRAP) Rule 3(c) in *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 314, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), and held that "the parties or parties taking the appeal *must* be specified in the notice of appeal." *Stewart Properties,* 8 Haw.App. at 435, 807 P.2d at 608 (emphasis in original). Although *Torres* interpreted FRAP Rule

---

7. Because we affirm the orders granting Harrison, *The Advertiser,* and Tanji's motions for summary judgment on the basis that Harrison's Statement was rhetorical hyperbole, we need not reach the issues of: (1) whether the Plaintiffs were estopped from arguing that Harrison defamed them or placed them in a false light because their claim against Harrison was inconsistent with their claim against *The Advertiser* and Tanji; or (2) whether the Plaintiffs properly served Harrison in Great Britain pursuant to the

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, November 15, 1965, art. 1, 20 U.S.T. 361, 362, T.I.A.S. No. 6638, 658 U.N.T.S. 163, 165. An appellate court may affirm a judgment of the lower court on any ground in the record that supports affirmance. *Poe v. Hawai'i Labor Relations Board, State of Hawai'i,* 87 Hawai'i 191, 197, 953 P.2d 569, 575 (1998) (citing *Enos,* 79 Hawai'i at 459, 903 P.2d at 1280).

3(c), HRAP 3(c) was almost identical to FRAP Rule 3(c) before its amendment in 1993.[8] "In instances where Hawai'i case law and statutes are silent, this court can look to parallel federal law for guidance." *State v. Ontai*, 84 Hawai'i 56, 61, 929 P.2d 69, 74 (1996) (quoting *Price v. Obayashi*, 81 Hawai'i 171, 181, 914 P.2d 1364, 1374 (1996)) (brackets omitted).[9]

■ Courts in other jurisdictions have held that when an attorney appeals Rule 11 sanctions, the attorney must be named as a party in the notice of appeal. "When an award of [Federal Rules of Civil Procedure (FRCP) Rule 11] sanctions runs only against the attorney, the attorney is the party in interest and must appeal in his or her own name." *Mylett v. Jeane*, 879 F.2d 1272, 1275 (5th Cir.1989) (citing *Torres*, 487 U.S. at 314, 108 S.Ct. 2405; *DeLuca v. Long Island Lighting Co.*, 862 F.2d 427, 429 (2d Cir. 1988)). "[I]n a [FRCP] Rule 11 sanctions appeal, 'the attorneys must appeal in their own names. A notice of appeal naming the party as the appellant, not the attorneys, does not create jurisdiction over the attorneys' appeal.'" *Federal Trade Comm'n v. Amy Travel Service, Inc.*, 894 F.2d 879, 880 (7th Cir.1989) (quoting *Rogers v. National Union Fire Ins. Co.*, 864 F.2d 557, 560 (7th Cir.1988)) (ellipsis omitted). *See also American Respiratory Care Services v. Manager of Revenue, City and County of Denver*, 835 P.2d 623, 626 (Colo.App.1992) (the client could not appeal Colorado Rules of Civil Procedure Rule 11 sanctions imposed against the attorneys because the attorneys were the real parties in interest and were required to file a separate notice of appeal to preserve for review their challenge to the sanctions).

■ We agree with the analysis in *Mylett, Amy Travel Service*, and *American Respiratory Care Services*. Under HRCP Rule 11, when the attorney is sanctioned, the attorney must pay the HRCP Rule 11 sanctions. The sanctioning of the attorney is completely independent of the attorney's representation of the represented party, and the represented party's case is otherwise unaffected and unprejudiced. Therefore, as the only person affected by the HRCP Rule 11 sanctions, the attorney is the real party in interest and must challenge the imposition of HRCP Rule 11 sanctions as a named party on appeal.

Accordingly, we hold that, on appeal, in a case where an attorney has been sanctioned pursuant to HRCP Rule 11, the attorney must be named as a party in the notice of appeal in order for this court to have the jurisdiction to address the circuit court's imposition of HRCP Rule 11 sanctions against the attorney.

Here, the Plaintiffs were named as the parties to the appeal of the underlying circuit court action against Harrison in the notice of appeal, but it was the Plaintiffs' attorney, Pickett, who was required to pay Harrison's attorneys' fees and costs in the amount of $12,504.48 as the HRCP Rule 11 sanctions. Pickett was named as the attorney in the notice of appeal, but was not named as a party. Consequently, as Pickett is not a party to this appeal, we lack appellate jurisdiction to address the circuit court's imposi-

8. HRAP Rule 3(c) provides:
 The notice of appeal shall specify the party or parties taking the appeal and shall designate the judgment, order or part thereof appealed from. Forms 1, 2 and 3 in the Appendix of Forms are suggested forms of notices of appeal. An appeal shall not be dismissed for informality of form or title of the notice of appeal.
 FRAP Rule 3(c), prior to its amendment in 1993, provides:
 The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken. Form 1 in the Appendix of Forms is a suggested form of a notice of appeal. An appeal shall not be dismissed for informality of form or title of the notice of appeal.

9. "[FRAP] Rule 3(c) was amended effective December 1, 1993, however, to provide that an appeal should not be dismissed 'for failure to name a party whose intent to appeal is otherwise clear from the notice.' The amendment effectively overrules *Torres* [, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988)] (*see Garcia v. Wash*, 20 F.3d 608, 609 (5th Cir.1994))[.]" *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 458 (7th Cir.1994). Inasmuch as HRAP Rule 3(c) has not been similarly amended, the interpretation of HRAP Rule 3(c) based on the construction of FRAP Rule 3(c) under *Torres* is still applicable.

tion of HRCP Rule 11 sanctions against Pickett.

Although we do not have appellate jurisdiction to decide the merits of the circuit court's imposition of HRCP Rule 11 sanctions against Pickett, we will discuss the circuit court's imposition of HRCP Rule 11 sanctions against Pickett in order to provide guidance to the circuit court because this appeal raises important issues concerning HRCP Rule 11 that have not been discussed previously by this court.

### 1. THE CIRCUIT COURT HAD THE AUTHORITY TO IMPOSE HRCP RULE 11 SANCTIONS AGAINST PICKETT.

HRCP Rule 11 provides in pertinent part:
The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry *it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.*

(Emphasis added); *see also Lepere*, 77 Hawai'i at 474, 887 P.2d at 1032.

The Harrison Order stated that Pickett was sanctioned pursuant to HRCP Rule 11 because "the claim against Defendant Harrison was not well grounded in fact or warranted by either existing law or a good faith argument for the extension, modification[,] or reversal of existing law." The Harrison Order did not identify the pleading, motion, or other paper that Pickett signed to invoke HRCP Rule 11 sanctions. The language of the Harrison Order stated that the basis for HRCP Rule 11 sanctions was "the claim against Defendant Harrison." This language indicates that the sanctions were based on the amended complaint filed on July 21, 1995, which alleged claims of defamation, false light/invasion of privacy, and intentional infliction of emotional distress against Harrison.

■■■ Although Pickett's name appeared in the complaint as an attorney for the Plaintiffs, Pickett did not sign the complaint. Generally, an attorney must sign a pleading, motion, or other paper to be held liable for a HRCP Rule 11 violation. *Enos*, 79 Hawai'i at 457, 903 P.2d at 1278. However, although Pickett did not sign the complaint, Pickett is responsible for the claim against Harrison in the complaint because: (1) Pickett's name was listed in the complaint as an attorney for the Plaintiffs; and (2) his actions later ratified or indicated that he adopted the signature of the attorney who did sign the complaint.

[W]here counsel whose name appears on a pleading fails to sign a pleading, but later comes into court and ratifies and adopts the signature of co-counsel as his own, the requirements of Rule 11 of the Federal Rules of Civil Procedure have been found to have been satisfied.

*Blossom v. Blackhawk Datsun, Inc.*, 120 F.R.D. 91, 101 (S.D.Ind.1988) (citing *Pavlak v. Duffy*, 48 F.R.D. 396, 398 (D.Conn.1969)). Although *Blossom* interpreted FRCP Rule 11, HRCP Rule 11 was modeled after FRCP Rule 11 before its amendment in 1993. *Lepere*, 77 Hawai'i at 473–74, 887 P.2d at 1031–32. "Where we have patterned a rule of procedure after an equivalent rule within the FRCP, interpretations of the rule by the federal courts are deemed to be highly persuasive in the reasoning of this court." *Kawamata Farms v. United Agri Products*, 86 Hawai'i 214, 255, 948 P.2d 1055, 1096 (1997) (citation and quotation marks omitted).[10]

In an affidavit to the circuit court, filed in support of his *ex parte* motion for an evidentiary hearing, Pickett declared that "[a]ll actions with respect to the filing and prosecution of this case ... were taken by me and my firm, as lead counsel for Plaintiffs[.]" Consequently, inasmuch as Pickett asserted that everything in the case was done with his full knowledge and approval, he ratified and adopted the complaint filed by the Plaintiffs as his own, waiving the argument that he

---

**10.** In 1993, FRCP Rule 11 was amended and is now substantively different from HRCP Rule 11.

never actually signed the complaint within the meaning of HRCP Rule 11. The circuit court, therefore, had the authority to impose HRCP Rule 11 sanctions against Pickett.

### 2. THE PLAINTIFFS' CLAIM WAS NOT WARRANTED BY EXISTING LAW.

We now examine whether the circuit court abused its discretion in imposing HRCP Rule 11 sanctions against Pickett. In support of its holding in the Harrison Order that "the claim against Defendant Harrison was not well grounded in fact or warranted by either existing law or a good faith argument for the extension, modification[,] or reversal of existing law[,]" the circuit court cited the following facts:

(1) the Plaintiffs' failure to explain why Defendant Harrison's statements were not constitutionally protected hyperbole, (2) the Plaintiffs' dismissal of their prior federal action against Harrison[,] and (3) [ ] the [circuit] court's ruling in favor of Defendants [*The Advertiser*] and Tanji and by Plaintiffs' prior inconsistent arguments concerning the intended target of the statements attributed to Defendant Harrison.

One of the bases for the circuit court's granting of HRCP Rule 11 sanctions against Pickett was that the claim against Harrison was not warranted by existing law. The circuit court held that because the Plaintiffs failed to explain why Harrison's Statement was not rhetorical hyperbole and not constitutionally protected, the Plaintiffs' claim was frivolous under HRCP Rule 11. We agree.

Pickett, in the memorandum in opposition to Harrison's motion for summary judgment, argued that Harrison's Statement was not constitutionally protected rhetorical hyperbole, but was his opinion of the Plaintiffs. As noted in Part III.A., *supra*, defamatory opinion is not constitutionally protected speech; however, Harrison's Statement was not a defamatory opinion, but was clearly rhetorical hyperbole. In the memorandum in opposition to Harrison's motion for summary judgment, Pickett made no attempt to distinguish this case from *Bresler, Letter Carriers, Falwell,* or *Milkovich,* United States Supreme Court cases that established constitutional protection for rhetorical hyperbole.

Accordingly, the circuit court's determination that the Plaintiffs' claim of defamation against Harrison was frivolous was not an abuse of discretion, and the circuit court properly imposed HRCP Rule 11 sanctions against Pickett, the Plaintiffs' attorney.[11]

### 3. THE CIRCUIT COURT DID NOT ABUSE ITS DISCRETION AND DID NOT DENY PICKETT DUE PROCESS BY FAILING TO HOLD AN EVIDENTIARY HEARING ON THE HRCP RULE 11 SANCTIONS.

Finally, we examine whether the circuit court abused its discretion and denied Pickett due process by failing to hold an evidentiary hearing on the HRCP Rule 11 sanctions.

Harrison's motion for HRCP Rule 11 sanctions was included with his motion for summary judgment, and the hearing for these motions was held on September 11, 1996. Pickett chose not to attend the hearing. The transcripts for this hearing were not included as a part of the record on appeal.

In any event, regardless of what happened at the hearing, Pickett received due process. Due process requires notice and a hearing, and Pickett received both. Harrison's motion for HRCP Rule 11 sanctions was served on Pickett on June 27, 1996, affording Pickett over two months to prepare for the HRCP Rule 11 hearing. Pickett addressed and opposed the motion for HRCP Rule 11 sanctions in the memorandum in opposition to Harrison's motion for HRCP Rule 11 sanc-

---

11. Because we would have affirmed the circuit court's imposition of HRCP Rule 11 sanctions against Pickett because the Plaintiffs' defamation claim against Harrison was not warranted by existing law, we need not reach the issues of whether HRCP Rule 11 sanctions were warranted because: (1) the Plaintiffs voluntarily dismissed the Federal Action against Harrison without prejudice; and (2) the Plaintiffs made inconsistent arguments concerning the intended target of Harrison's Statement.

tions. In addition, it was Pickett's choice not to attend the hearing.

Pickett did request an evidentiary hearing in an *ex parte* motion to the circuit court following the granting of HRCP Rule 11 sanctions at the September 11, 1996 hearing; however, in the *ex parte* motion, Pickett did not explain what evidence he planned to introduce or otherwise indicate why an evidentiary hearing was necessary.[12]

Accordingly, the circuit court did not abuse its discretion and did not deny Pickett due process by failing to hold an evidentiary hearing on the HRCP Rule 11 sanctions.

### C. *THE PLAINTIFFS' APPEAL WAS FRIVOLOUS AND WARRANTED SANCTIONS PURSUANT TO HRAP RULE 38.*

In his answering brief, Harrison argues that the Plaintiffs' appeal of this case was frivolous and moves for attorneys' fees and costs for this appeal pursuant to HRAP Rule 38.[13] We agree and hold that Harrison is entitled to HRAP Rule 38 relief.

■ HRAP Rule 38 states that "[i]f a Hawai'i appellate court shall determine that an appeal decided by it was frivolous, it may award damages including reasonable attorneys' fees and costs to the appellee." In *Abastillas v. Kekona,* 87 Hawai'i 446, 958 P.2d 1136 (1998), we noted that where the circuit court ruled that a lawsuit was frivolous,

> it follows logically that the subsequent appeal was also frivolous. *See Mestayer v. Wisconsin Physicians Serv. Ins. Corp.,* 905 F.2d 1077, 1081 (7th Cir.1990) ("An appeal may be frivolous when it merely restates arguments that the [trial] court properly rejected ... [or that] were so groundless as to be held sanctionable by the [trial] court.")

*Abastillas,* at 449, 958 P.2d at 1139 (brackets and ellipsis in original).

■ Examining the record, Harrison correctly argues that the Plaintiffs' claim of defamation against Harrison was meritless— Harrison's Statement was clearly rhetorical hyperbole protected by the first amendment. Similarly, the HRCP Rule 11 sanctions imposed against Pickett were warranted because the Plaintiffs' claim of defamation was not warranted by existing law and the Plaintiffs made no good faith argument for the extension or modification of the law.

On appeal, the Plaintiffs continued to argue that Harrison's Statement was his opinion of the Plaintiffs and that HRCP Rule 11 sanctions were not warranted, but do not point to any evidence or case law that was not already cited in their memorandum submitted in opposition to Harrison's motion for summary judgment and HRCP Rule 11 sanctions. This was not only a situation of the Plaintiffs failing to prevail on meritless claims, but also a matter of the Plaintiffs refusing to acknowledge controlling authority brought to their attention on numerous occasions. The Plaintiffs continued to make the same argument that Harrison's Statement was opinion and that HRCP Rule 11 sanctions were unwarranted, despite the fact that Harrison's Statement was clearly rhetorical hyperbole. The Plaintiffs completely ignored the *Bresler—Letter Carriers—Falwell* line of cases, which discussed rhetorical hyperbole, failing even to address these cases in their opening brief. Based on the facts of this case, the Plaintiffs' appeal was frivolous and warrants sanctions in the form of attorneys' fees and costs pursuant to HRAP Rule 38.

Accordingly, we hold that the Plaintiffs' appeal was frivolous and grant Harrison's request for attorneys' fees on the appeal pursuant to HRAP Rule 38.

---

12. Pickett did state that he contested the imposition of HRCP Rule 11 sanctions against him and the amount of the HRCP Rule 11 sanctions, but Pickett could have raised and addressed these issues at the September 11, 1996 hearing, had he chosen to attend the hearing.

13. Harrison also moved for attorneys' fees and costs on appeal pursuant to HRCP Rule 11. However, HRCP Rule 11 does not apply to attorneys' fees and costs on appeal. HRCP Rule 1 provides that the Hawai'i Rules of Civil Procedure govern civil procedure in the circuit court. HRAP Rule 1(a) provides that the Hawai'i Rules of Appellate Procedure govern procedure in appeals to the Hawai'i Supreme Court from the circuit court. Consequently, HRAP Rule 38, and not HRCP Rule 11, governs frivolous appeals.

108

IV. *CONCLUSION*

For the foregoing reasons, we affirm: (1) the final judgment, filed January 10, 1997; (2) the order granting *The Advertiser* and Tanji's motion for summary judgment, filed October 17, 1995; and (3) the Harrison Order, filed November 14, 1996. We also grant Harrison's request for attorneys' fees and costs on appeal pursuant to HRAP Rule 38.