137 F.3d 1090
 157 L.R.R.M. (BNA) 2537, 135 Lab.Cas. P 10,121,
98 Cal. Daily Op. Serv. 1127
 SAN ANTONIO COMMUNITY HOSPITAL, Plaintiff-Appellee,
v.
SOUTHERN CALIFORNIA DISTRICT COUNCIL OF CARPENTERS, an
unincorporated association; Carpenters Local
1506, an unincorporated association;
Does 1 through 100,
Defendants-Appellants.
 No. 96-56124.
 United States Court of Appeals,
Ninth Circuit.
 Feb. 17, 1998.
 
 Before: FARRIS, KOZINSKI, and T.G. NELSON, Circuit Judges.
 
 
 1
 REINHARDT, Circuit Judge, with whom Judges PREGERSON, KOZINSKI, and TASHIMA join, dissenting from the failure to rehear en banc:
 
 
 2
 Prior report: 125 F.3d 1230.
 
 ORDER
 
 3
 Judges Farris and T.G. Nelson voted to deny the petition for rehearing. Judge Nelson votes to reject the suggestion for rehearing en banc, and Judge Farris so recommends. Judge Kozinski voted to grant the petition for rehearing and votes to accept the suggestion for rehearing en banc.
 
 
 4
 The full court was advised of the suggestion for rehearing en banc. An active judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R.App. P. 35.
 
 
 5
 The petition for rehearing is DENIED and the suggestion for a rehearing en banc is REJECTED.
 
 
 6
 REINHARDT, Circuit Judge, with whom Judges PREGERSON, KOZINSKI, and TASHIMA join, dissenting from the failure to rehear en banc:
 
 
 7
 Once again, I am compelled to express my deep regret that this court has failed to exercise its responsibility to rehear a case en banc.[1] By refusing to review the divided panel opinion, we become not only the first circuit court in the 66-year history of the Norris-LaGuardia Act to uphold a preliminary injunction against peaceful labor speech on the basis that the content of the message constitutes "fraud," but also the first circuit court in the 34-year history of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), to uphold an injunction against speech subject to the First Amendment's "actual malice" standard. I would have thought that such an opinion would have disturbed the "uniformity of our decisions" or "involv[ed] a question of exceptional importance." Fed. R.App. P. 35(a); Ninth Cir. Rule 35(a). Apparently not, in the view of a majority of our active judges.[2]
 
 
 8
 This case required en banc rehearing to overrule two fundamental errors in the majority opinion: (1) its disregard for the previously unchallenged rule that federal judges may not issue injunctions that operate as prior restraints on peaceful labor speech; and (2) its erroneous holding that a "labor dispute" does not exist when a union pickets a "secondary" employer. The second error contravenes the plain language of the Norris-LaGuardia Act, repudiates a determination deliberately made by Congress when enacting that law, and specifically reaffirmed by Congress 15 years later when enacting the Taft-Hartley Act, and, to top it off, creates a direct intra-circuit conflict with Smith's Mgmt. v. IBEW Local 357, 737 F.2d 788 (9th Cir.1984).
 
 
 9
 * The majority found, without citing a single case involving free speech in the context of labor disputes, or a single case involving free speech covered by New York Times v. Sullivan, that because members of the public could misinterpret the Union's banner as stating that the Hospital had a rodent problem, the language on the banner was "so misleading that it falls beyond the First Amendment's protections." 125 F.3d 1230, 1237 (9th Cir.1997) (quotation omitted).[3] On that basis, it upheld an injunction against the union speech. As Judge Kozinski's dissent convincingly demonstrates, however, this decision is directly contrary to law. 125 F.3d at 1239-40 (Kozinski, J., dissenting). I briefly add to my able colleague's cogent analysis only in order to highlight the fact that a long line of decisions by the federal courts leaves no doubt that the language on the banner falls well within the protections of the Norris-LaGuardia Act and the First Amendment--and that in no event can such speech be enjoined.
 
 
 10
 Because the Norris-LaGuardia Act's "fraud" exception is the same as the "actual malice" standard first enunciated in New York Times v. Sullivan, see Linn v. United Plant Guard Workers, 383 U.S. 53, 58, 86 S.Ct. 657, 660-61, 15 L.Ed.2d 582 (1966), the Supreme Court has made it perfectly clear that " 'the most repulsive [labor] speech enjoys immunity provided it falls short of deliberate or reckless untruth' " and, "[b]efore the test of reckless or knowing falsity can be met, there must be a false statement of fact." Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers, 418 U.S. 264, 284, 94 S.Ct. 2770, 2781, 41 L.Ed.2d 745 (1974) (quoting Linn, 383 U.S. at 63, 86 S.Ct. at 663) (citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40, 94 S.Ct. 2997, 3006-07, 41 L.Ed.2d 789 (1974)) (emphasis added). Moreover, since "[l]abor disputes are ordinarily heated affairs, ... frequently characterized by bitter and extreme exchanges, countercharge, unfounded rumors, vituperations, personal accusations, misrepresentations and distortions," Linn, 383 U.S. at 58, 86 S.Ct. at 660-61, "federal law gives a union license to use intemperate, abusive, or insulting language without fear of restraint." Letter Carriers, 418 U.S. at 283, 94 S.Ct. at 2781 (emphasis added).
 
 
 11
 The Court has been no less emphatic in applying this standard. It stated over 50 years ago, in reversing a state court injunction of union picketing, that "to use loose language or undefined slogans that are part of the conventional give-and-take in our economic and political controversies--like 'unfair' or 'fascist '--is not to falsify facts." Cafeteria Employees Local 302 v. Angelos, 320 U.S. 293, 295, 64 S.Ct. 126, 127, 88 L.Ed. 58 (1943) (emphasis added). More recently, the Court held that a union's repeated references in newsletters to replacement workers as "scabs" "cannot be the basis of a state libel judgment"--let alone an injunction--because unions must be permitted to employ "rhetorical hyperbole, a lusty and imaginative expression of the contempt felt by union members towards those who refuse to join." Letter Carriers, 418 U.S. at 282-83, 286, 94 S.Ct. at 2780-81, 2782.
 
 
 12
 Until the majority's opinion, federal courts had consistently come to the seemingly obvious conclusion that the Court's pronouncements applied equally to the word "rat," another commonplace term in labor disputes--a term that refers to replacement workers and their employers. See BE & K Const. Co. v. NLRB, 23 F.3d 1459, 1463 (8th Cir.1994) (protecting union's right to urge boycott against "rat" contractor); Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union, 840 F.Supp. 697, 705 (E.D.Mo.1993) (holding that handbill outside grocery store entitled "Don't Help Feed the Rat" was protected speech), aff'd, 39 F.3d 191 (8th Cir.1994). This judicial conclusion finds direct support in the dictionary as well. See 2 The New Shorter Oxford English Dictionary 2480 (4th ed.1993) (defining "rat" as "[a] worker who refuses to join a strike or who takes a striker's place"); Webster's Third New International Dictionary 1884 (1981) (same).
 
 
 13
 Notwithstanding the unequivocal precedent protecting speech like that used in the Union's banner (and even protecting the very term involved), the two-judge majority erroneously concluded that "the Union's banner crossed the line separating protected rhetorical hyperbole from unprotected fraudulent misrepresentations of fact," 125 F.3d at 1237. In holding that the Union's message was so far removed from the type of dialogue properly employed in labor disputes that it could be enjoined by a federal judge, the majority was plainly insensitive to the type of terminology long used in labor disputes and was simply wrong about the injunctive powers of the federal courts in the post Norris-LaGuardia era.
 
 
 14
 For starters, the banner used a well-established term and it stated the truth. It used the term "rats" in the precise manner the term is traditionally used in labor disputes and in the manner that the dictionary recognizes it is used in such context. "Rats," contractors who are paying less than the prevailing wage and workers who are accepting such a wage, were "literally and factually" prevalent in the Hospital. That alone is enough to protect the speech from ordinary tort liability. See Letter Carriers, 418 U.S. at 283, 94 S.Ct. at 2780-81 (holding that usage of "scab" was protected because, as used in the labor context of the case, it was "literally and factually true"). It is far more than enough to protect it against a post-Norris-LaGuardia-Act injunction by federal judges. Moreover, the union's conduct was hardly recklessly misrepresentative. Lest any readers of the banner be confused by the meaning of the word "rats" in the banner's context, the word was immediately followed by the Union's name and an explanation that a labor dispute was occurring. And, just to be sure, union members were passing out flyers explaining that "[a] rat is a contractor that does not pay all of its employees prevailing wages or provide health and pension benefits to all of its employees." 125 F.3d at 1239 n. 2. To read, as the majority did, the first sentence of the banner entirely out of context and conclude that it was recklessly "false" ignores entirely the context and circumstances in which speech must be understood. See Iron Workers v. Pauly Jail Bldg. Co., 118 F.2d 615 (8th Cir.1941) ("Expressions of opinion, though inaccurate and even misrepresentative in character, obviously cannot be permitted to be made the basis ordinarily for injunctive processes in a labor dispute"). Even worse, it quashes unions' well-established right to use "lusty and imaginative" words in a "loose, figurative," sense. Letter Carriers, 418 U.S. at 284, 94 S.Ct. at 2781. The majority opinion would certainly not permit or encourage "robust speech."
 
 
 15
 Only unprotected "commercial speech"--i.e., "[f]alse, deceptive, or misleading, advertising," In re R.M.J., 455 U.S. 191, 200, 102 S.Ct. 929, 936, 71 L.Ed.2d 64 (1982) (emphasis added)--has ever been subjected to prior restraint. But speech regarding labor disputes is not commercial speech. DeBartolo Corp. v. Florida Gulf Coast Bldg & Const., 485 U.S. 568, 576, 108 S.Ct. 1392, 1398 (1988). Judge Kozinski is correct, therefore, in stating that "damages after trial on the merits is the high water mark of available relief," 125 F.3d at 1240, for defamation claims involving speech covered by New York Times v. Sullivan. Speech that is subject to that doctrine is, for all practical purposes, not subject to injunctive relief. See Near v. Minnesota, 283 U.S. 697, 718-19, 51 S.Ct. 625, 631-32, 75 L.Ed. 1357 (1931) (stating, over thirty years before New York Times v. Sullivan, that prior restraints on allegedly defamatory speech relating to public figures offend "the deep-seated conviction that such restraints would violate constitutional right" and that, for this reason, public figures "find their remedies ... in actions" for damages, "not in proceedings to restrain ... publication"); Community for Creative Non-Violence v. Pierce, 814 F.2d 663, 672 (D.C.Cir.1987) (stating that the settled rule, save a narrow exception not relevant here, is that "equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages").[4] That is why, until today, no court has ever upheld an injunction prohibiting the type of speech at issue here.[5]
 
 II
 
 16
 In its decision, the majority also stated, without citation to any authority, that "[w]here, as here, a union's fraudulent language is directed at an entity with which no labor dispute exists, the Norris-LaGuardia Act does not prevent a district court from exercising its jurisdiction to issue an injunction prohibiting the fraudulent activity." 125 F.3d at 1235. Here, too, it is clearly wrong. There was indeed a "labor dispute" involving the hospital. In relying on the prohibited primary/secondary employer distinction in order to justify its affirmance of the injunction, the majority "commit[ted] precisely the error that prompted Congress to pass the [Norris-LaGuardia] Act," Burlington No. R. Co. v. Maintenance Employees, 481 U.S. 429, 442, 107 S.Ct. 1841, 1849, 95 L.Ed.2d 381 (1987), totally ignored our decision in Smith's Mgmt. v. IBEW Local 357, 737 F.2d 788 (9th Cir.1984), and contravened Congress' carefully crafted statutory scheme for dealing with "secondary boycotts."
 
 
 17
 There is no question that this case involves a "labor dispute" within the meaning of the Norris-LaGuardia Act. This court and the Supreme Court have stated in no uncertain terms that "in the Norris-LaGuardia Act, 'Congress abolished, for purposes of labor immunity, the distinction between primary activity involving the immediate disputants and secondary activity in which the employer disputants and the members of the union do not stand in the proximate relation of employer and employee.' " Smith's Mgmt., 737 F.2d at 790 (quoting National Woodwork Mfrs. Ass'n v. NLRB, 386 U.S. 612, 623, 87 S.Ct. 1250, 1257, 18 L.Ed.2d 357 (1967) (second internal quotation omitted)); see also 29 U.S.C. § 113(c) (defining labor dispute).[6] Indeed, in Smith's Mgmt. we held that a "labor dispute" existed where the circumstances were for all practical purposes identical to those present here. A supermarket hired a subcontractor that employed non-union labor to perform electrical work in the market. When the union distributed handbills outside the market in order to organize a secondary boycott of the market, the market obtained a preliminary injunction from the district court on secondary boycott grounds. This court forcefully vacated the injunction, holding that there was "no question" that a "labor dispute" could and did exist between the union and the supermarket within the meaning of the Norris-LaGuardia Act; that "the issuance of the injunction violated the Norris-LaGuardia Act;" and that the district court was without jurisdiction to issue any such order. Smith's Mgmt., 737 F.2d at 790-92; see also California Ass'n of Employers v. Building and Const. Trades Council, 178 F.2d 175, 179 (9th Cir.1949) (holding that union had labor dispute with secondary employer).
 
 
 18
 As if this error were not bad enough, the opinion's reliance on the "secondary" employer issue threatens to undo Congress' carefully crafted statutory scheme for dealing with such issues. In 1947, Congress enacted a measure entirely separate from the Norris-LaGuardia Act to deal, inter alia, with the problem of "secondary boycotts," the Labor-Management Relations Act of 1947 ("LMRA") (popularly known as the Taft-Hartley Act), and, in so doing, specifically "rejected the proposal that the Norris-LaGuardia Act's prohibition against labor-dispute injunctions" be lifted in the case of such boycotts. Northern Stevedoring & Handling Corp. v. International Longshoremen's & Warehousemen's Local 60, 685 F.2d 344, 348 (9th Cir.1982). Instead it created in the LMRA a separate and strictly limited procedure authorizing the National Labor Relations Board--and only the National Labor Relations Board--to seek injunctive relief due to any unlawful effects of secondary boycotts, and then only after certain specific administrative steps or procedures had been followed. See, e.g., Bakery Sales Drivers Local 33 v. Wagshal, 333 U.S. 437, 68 S.Ct. 630, 92 L.Ed. 792 (1948).
 
 CONCLUSION
 
 19
 In 1960, the Supreme Court reaffirmed that in passing the Norris-LaGuardia Act, "Congress was intent on taking the federal courts out of the labor injunction business." Marine Cooks & Stewards v. Panama S.S. Co., 362 U.S. 365, 369, 80 S.Ct. 779, 783, 4 L.Ed.2d 797 (1960). I respectfully dissent from this court's failure to rehear en banc its unfortunate and unprecedented decision to get back into that business in order to regulate traditional, robust labor speech, in violation of the clear mandate of not only our national labor laws but of our fundamental First Amendment doctrine as embodied in New York Times v. Sullivan.
 
 
 
 [1]
 See also, e.g., Rendish v. City of Tacoma, 134 F.3d 1389 (9th Cir.1998) (Reinhardt, J., dissenting from failure to rehear en banc)
 
 
 [2]
 I use the term "majority" for convenience. Because it requires an affirmative vote of a majority of active judges to take a case en banc, and we now have an even number of active judges (18 out of our authorized 28), it is possible in any given case in which we failed to go en banc that we evenly divide. I am not allowed to disclose the actual vote in this or any other en banc matter
 
 
 [3]
 The Union's banner, which it displayed near the Hospital's construction site, read:
 THIS HOSPITAL IS FULL OF RATS.
 CARPENTERS L.U. 1506 HAS A DISPUTE WITH [Best Int.] FOR FAILING TO PAY PREVAILING WAGES TO ITS WORKERS.
 The letters on the top line were 12 inches high, while the letters on the bottom lines were 5 inches high.
 
 
 [4]
 The opinion's attempt to find authority to the contrary fails completely. Because the Norris-LaGuardia Act standard and the Sullivan standard have been around for 65 and 33 years, respectively, there is certainly no dearth of cases explaining the bounds of their application. Yet neither of the only two federal cases the majority cites in its "prior restraint" section that purportedly supports its revolutionary endorsement of the issuance of a preliminary injunction prohibiting controversial speech, see 125 F.3d at 1239, involves speech covered by either doctrine. Nor does either case even involve the question of an injunction, preliminary or otherwise. The first case the majority cites, Peel v. Attorney Registration and Disciplinary Comm'n, 496 U.S. 91, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990), involves the Bar's attempt to discipline an attorney who engaged in commercial speech by advertising his services as a "specialist." Even though the Peel speech enjoys less First Amendment protection than labor speech, the Court found, despite the likelihood that it would be misunderstood by some members of the general public, that the attorney's speech was protected. 496 U.S. at 106-07 & n. 14, 110 S.Ct. at 2290-91 & n. 14. The Bar did not seek injunctive relief. The second case the majority cites, Gehl Group v. Koby, 63 F.3d 1528 (10th Cir.1995), serves it no better. It was a § 1983 suit for damages, and again no injunctive relief was sought. The "First Amendment" claim in that case was "one of vindictive prosecution" brought against police departments and officials for criminally charging the plaintiffs (under Colorado law) with lying in fund-raising efforts on behalf of their charity. Id. at 1534. The court affirmed a ruling of summary judgment in favor of the police on the ground of qualified immunity because the police "established that their conduct was objectively reasonable" and the plaintiffs failed to "produc[e] specific evidence" demonstrating an "unconstitutional motive" to burden legitimate solicitations. Id. at 1537
 
 
 [5]
 Even if the majority were somehow correct that the hospital had demonstrated a "reasonable probability," 125 F.3d at 1237, that the Union's banner was "deliberately and recklessly untru[e]," Letter Carriers, 418 U.S. at 284, 94 S.Ct. at 2781, such a finding could not justify imposing an injunction, preliminary or otherwise, on speech of this sort. "An interlocutory injunction based on a 'reasonable probability' of malice is, by hypothesis, not based on 'actual malice.' " San Antonio Comm. Hosp., 125 F.3d at 1240 (Kozinski, J., dissenting)
 
 
 [6]
 The Supreme Court, in fact, explained at great length in Burlington No. R. Co. that Congress intended the Norris-LaGuardia Act's definition of "labor dispute" to overrule Duplex Printing Press Co. v. Deering, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349 (1921), which had held that unions were afforded less protection in activities aimed at "secondary" entities. See 481 U.S. at 438, 107 S.Ct. at 1847