**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000452
27-FEB-2025
08:11 AM
Dkt. 87 SO

NO. CAAP-21-0000452


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


CHANG Y. AIONA, V, Plaintiff-Appellant,
v.
COUNTY OF HAWAI'I; JOHN A. MEDEIROS, individually
and official capacity, Defendants-Appellees,
and
DOE PERSONS 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; ROE "NONPROFIT" CORPORATIONS 1-10;
and ROE GOVERNMENTAL ENTITIES 1-10, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 3CC16100342K)


SUMMARY DISPOSITION ORDER
(By: Wadsworth, Presiding Judge, Nakasone and McCullen, JJ.)

This appeal arises out of a grant of summary judgment on Plaintiff-Appellant Chang Y. Aiona, V's (**Aiona**) defamation claims in favor of Aiona's former employer Defendants-

Appellees County of Hawaiʻi (**County**) and John A. Medeiros (**Medeiros**) (collectively, **Appellees**). Aiona's defamation claims arose out of his employment with the County's Department of Environment Management (**DEM**), during which he was investigated by Medeiros, who was the Deputy Director of DEM, for the alleged theft of HI-5 recycling containers and other recyclable material from County recycling stations. We affirm.

Aiona appeals from the (1) May 25, 2021 "Findings of Fact [(**FOFs**)], Conclusions of Law [(**COLs**)] and Order Granting *County Defendants' Motion for Summary Judgment*, Filed January 25, 2021" (**Order Granting MSJ**); and (2) July 7, 2021 "Final Judgment," both filed and entered by the Circuit Court of the Third Circuit (**Circuit Court**).[1]

On appeal, Aiona's points of error (**POEs**)[2] (B)(1) through (B)(8) challenge various COLs the Circuit Court made in its Order Granting MSJ[3] on grounds that the COLs "misstated" or "misapplied" "the law of defamation." Aiona challenges the COLs for two categories of alleged defamation on appeal: (1) allegedly defamatory statements Medeiros made to DEM Human Resources Technician Brandyann Kerr (**Medeiros's statements to Kerr**), and (2) alleged publication of defamatory statements by

---

[1]     The Honorable Wendy M. DeWeese presided.

[2]     Aiona's POEs labeled (A)(1) through (A)(4) challenge various FOFs, but the Opening Brief contains no specific argument how these FOFs are clearly erroneous. These challenges are waived. See Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd., 100 Hawaiʻi 97, 110, 58 P.3d 608, 621 (2002) ("Where an appellant raises a point of error but fails to present any accompanying argument, the point is deemed waived." (citation omitted)); Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(7) ("Points not argued may be deemed waived.").

[3]     The pertinent COLs are quoted infra.

County employees to the community (**publication by County employees**).[4]

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve Aiona's contentions as follows.

On October 21, 2016, Aiona filed a Complaint against Appellees for defamation per se and per quod, and derivative claims of false light and intentional infliction of emotional distress.

On January 25, 2021, Appellees filed a Motion for Summary Judgment (**MSJ**), arguing, inter alia, that the statements did not meet the first element of an actionable defamation claim because the "statements were not defamatory," as they "were true," and were "constitutionally protected opinion and rhetorical hyperbole."  Appellees also argued that there was no evidence that either the County or Medeiros was responsible for any publication by County employees.

Aiona opposed, arguing, inter alia, that statements made by the Appellees were not "true" and were not "rhetorical hyperbole"; that a jury should make the determination "if a statement can be interpreted as having both an innocent and a defamatory meaning"; and that the court was required to apply the applicable defamation caselaw for non-media or non-public figures.

At the March 19, 2021 MSJ hearing, the Circuit Court orally granted the MSJ on the defamation claims because the

---

[4]     While FOF 22 in the Order Granting MSJ set forth five categories of "alleged defamatory communications forming the subject matter of this action," the Opening Brief presents discernible argument for only two categories, to which we confine our review.  See HRAP Rule 28(b)(7).

statements were "not false or defamatory" and did not establish the first element required for defamation.[5]

On May 25, 2021, the Circuit Court filed its Order Granting MSJ, containing the COLs pertinent to this appeal. Aiona challenges COLs 18-27[6] relating to Medeiros's alleged defamatory statements to Kerr, and COLs 28-32,[7] relating to the alleged publication by County employees:

### Protected Opinions and Rhetorical Hyperbole

18. The United States Supreme Court has "'recognized constitutional limits on the type of speech which may be subject to state defamation claims.'" *Gold*, 88 Hawaiʻi at 101, 962 P.2d at 360[.]

19. Although state law primarily governs defamation, the First Amendment's safeguards for freedom of speech limit state law. *New York Times v. Sullivan,* 376 U.S. 254, 264 (1964). *New York Times v. Sullivan*, 376 U.S. 254, 264 (1964).

20. While opinions and rhetorical hyperbole are protected by the First Amendment, a statement that implies "a false assertion of fact" is actionable. *Milkovich v. Lorain Journal* Co., 497 U.S. 1, 19 (1990); *see also Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995).

21. First Amendment protection for opinions extends to non-media defendants. *Williams v. Kanemaru*, No. CAAP-11-0000419, 130 Hawaiʻi 304, 309 P.3d 972, 2013 WL 4458887, *2 (Haw. Ct. App. Aug. 20, 2013); *see, e.g.,*

---

[5]     A plaintiff must establish the following four elements in order to sustain a defamation claim:  (1) "a false and defamatory statement concerning another"; (2) "an unprivileged publication to a third party"; (3) "fault amounting at least to negligence on the part of the publisher [and] actual malice where the plaintiff is a public figure"; and (4) "either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Gold v. Harrison, 88 Hawaiʻi 94, 100, 962 P.2d 353, 359 (1998) (brackets and citation omitted).

[6]     COL 27 ruled on six alleged defamatory statements to Kerr set forth in COL 27(a) through (f), but Aiona presents argument only as to four statements to Kerr -- 27(a), (b), (d), and (e) -- to which we confine our review.

[7]     Aiona presents no argument in his challenge to COLs 28 and 29, which are statements of the law pertaining to publication.  This challenge is waived.  See HRAP Rule 28(b)(7).  COL 32 relates to a category of statements that we do not address.

*Farrow v. O'Connor, Red, Gollihue & Sklarin*, 51 A.D.3d 626, 627 (N.Y. App. Div. 2008); *Robertson v. Sw. Bell Yellow Pages, Inc.*, 190 S.W.3d 899 (Tex. App. 2006).

22. "Pure opinions are those that do not imply facts capable of being proved true or false." *Partington*, 56 F.3d at 1153 n.10 (internal quotation marks and citation omitted); *see also Wilson*, 121 Hawai'i at 129, 214 P.3d at 1119.

23. "A simple expression of opinion based on disclosed ... non-defamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is.'" [sic] *Williams*, 2013 WL 4458887 at *2 (quoting Restatement § 566 cmt. c). "The rationale behind this rule is that when the facts are disclosed, third parties, will understand that they are hearing the defendant's 'interpretation of the facts presented; they are therefore unlikely to construe the statement as insinuating the existence of additional, undisclosed facts.'" *Williams*, 2013 WL 4458887 at *2 (quoting *Standing Comm. on Discipline of the U.S. Dist. Court for the Cent. Dist. of Cal. v. Yagman,* 55 F.3d 1430, 1439 (9th Cir. 1995)).

24. Rhetorical hyperbole is "figurative or hyperbolic language that would negate the impression that a person was asserting an objective fact." *Gold*, 88 Hawai'i at 101, 962 P.2d at 360. Courts define "rhetorical hyperbole" as lusty and imaginative expressions of contempt. *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers, AFL-CIO v. Austin*, 218 U.S. 264, 286 (1974); *San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters*, 137 F.3d 1090, 1091 (9th Cir. 1998).

25. "In reviewing a defamation claim, a court must ask as a threshold matter whether a reasonable factfinder could conclude that the contested statement implies an assertion of objective fact." *Partington*, 56 F.3d at 1153 (internal quotation marks and brackets and citation omitted); *Wilson*, 121 Hawai'i at 128, 214 P.3d at 1118 (quotation marks and citation omitted). "If the answer is no, the claim is foreclosed by the First Amendment." *Partington*, 56 F.3d at 1153.

26. The following test is applied to determine whether a statement is false and defamatory under the First Amendment to the United States Constitution and article I, section 4 of the Hawai'i Constitution [(**Gold test**)]:

> (1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact; (2) *whether the defendant used figurative or hyperbolic language that negates that impression*; and (3) whether the

statement in question is susceptible of being proved true or false.

*Gold*, 88 Hawaiʻi at 101, 962 P.2d at 360 (italics in original; citation and brackets omitted).

27. Under the *Gold* test, the following statements are not false and defamatory as a matter of law because their general tenor negates the impression the speaker was asserting an objective fact; instead, they are rhetorical hyperbole or opinion, not susceptible of being proved true or false, and incapable of the defamatory meaning [Aiona] ascribes to them and, therefore, they are not actionable, *see Underwager v. Channel 9 Australia*, 69 F.3d 361, 366-67 (9th Cir. 1995); *Partington*, 56 F.3d at 1160; *Gold*, 88 Hawaiʻi at 101, 962 P.2d at 360:

a. Mr. Medeiros' statement to Ms. Kerr that [Aiona] "was like the 'modern day mafia'", FOF No. 22.f, *supra*;

b. Mr. Medeiros' statement to Ms. Kerr that [Aiona] "bullied other senior Equipment Operators to say 'no' to call backs so [Aiona] can get all of the overtime," FOF No. 22.e, *supra*;

. . . .

d. Mr. Medeiros' statement to Ms. Kerr "that although the investigation didn't have substantial evidence against [Aiona], Mr. Medeiros believes it to be because [Aiona] 'bullied' the other employees into not talking," FOF No. 22.b, *supra*;

e. Mr. Medeiros' statement to Ms. Kerr that "he did not want [Aiona] to get the WS-10 position," FOF No. 22.d, *supra*; and

. . . .

### No Publication

. . . .

30. None of the statements set forth in FOF No. 22, *supra*, were subject to an unprivileged publication to a third-party.

31. [Aiona]'s claim County employees' publication to the community at large that [Aiona]'s "job was at jeopardy as he was accused of stealing HI-5 recyclables," and that "he might get terminated from his position," FOF No. 22.i, *supra*, fails as a matter of law because there is no evidence Mr. Medeiros or any other County employee was responsible for the spread of rumors to the public at large. The lack of admissible evidence about the source of

> the rumor precludes [Aiona]'s defamation claim against County Defendants based on that alleged statement. *See Illaraza v. Hovensa LLC*, 73 F.Supp.3d 588, 606 (D.V.I. 2014). Thus, [Aiona]'s conjecture that County employees could be the only source is too speculative to defeat summary judgment, *see Andrews v. Hansford Manufacturing Corp.*, Index No. 4641/00, 2002 WL 193139, *5 (N.Y. App. Div. Jan. 22, 2002), and insufficient to establish a defamation claim against County Defendants. *See Szot v. Allstate Ins.* Co., 161 F.Supp.2d 596, 608-09 (D. Md. 2001).

(Brackets omitted.)

On July 7, 2021, the Circuit Court entered Final Judgment. Aiona timely appealed.

"This court reviews a circuit court's grant or denial of summary judgment *de novo*." Bhakta v. Cnty. of Maui, 109 Hawai‘i 198, 207, 124 P.3d 943, 952 (2005) (citation omitted). "This court reviews the trial court's COLs *de novo*." Id. at 208, 124 P.3d at 953 (citation omitted). Summary judgment may be "properly granted if the court found that the communication was incapable of bearing the defamatory meaning ascribed to it by the appellant as a matter of law." Fernandes v. Tenbruggencate, 65 Haw. 226, 228, 649 P.2d 1144, 1147 (1982).

**Medeiros's statements to Kerr were non-actionable opinions as a matter of law.**

Aiona specifically challenges the following allegedly defamatory statements Medeiros made to Kerr: (1) that Medeiros "did not want . . . Aiona to get that job" (referring to a promotion); (2) that Aiona "was like the 'modern day mafia'"; and (3) that Aiona was "bullying other co-workers." (Bolding omitted.) Aiona argues that Medeiros's statements to Kerr "were not 'rhetorical hyperbole'"; that this conclusion was "inherently flawed because [it was] premised" on the three-part Gold test for determining whether a statement in a defamation case is false and defamatory; and that the Gold test is only "applicable to public figures and media defendants." Aiona

7

maintains that the Circuit Court erred in COLs 18 through 27 by applying "the wrong standard of law of defamation by extending the First Amendment principles applicable to public figures and media defendants to defamatory statements about a private person."

The Circuit Court set forth the three-part Gold test in COL 26, and applied it along with related First Amendment case law in its other COLs. The Hawaiʻi Supreme Court adopted the Gold test, which derived from federal precedent that designed the test to protect First Amendment concerns in defamation suits involving either public figures, matters of public concern, or media defendants. See Milkovich v. Lorain Journal Co., 497 U.S. 1, 3 (1990) (involving a defamation suit by a former high school wrestling coach against a newspaper and reporter because of a newspaper article implying that the former coach lied under oath at a judicial proceeding); Unelko Corp. v. Rooney, 912 F.2d 1049, 1050 (9th Cir. 1990) (involving a defamation suit by a car products manufacturer over statements made by a television personality regarding one of its products made on a televised broadcast of "60 Minutes"). The Milkovich Court reaffirmed its prior ruling in Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767 (1986), that "a statement on matters of public concern must be provable as false before there can be liability under state defamation law, at least in situations, like the present, where a media defendant is involved." 497 U.S. at 19-20 (emphasis added). It noted that "rhetorical hyperbole" in public debate must be protected under the First Amendment, and cannot form the basis for a defamation claim. See id. at 20 (protecting "statements that cannot 'reasonably be interpreted as stating actual facts' about an individual" so that "public debate will not suffer for lack of 'imaginative

expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation" (citation and brackets omitted)).

Gold also involved a suit by private-figure plaintiffs against a public-figure defendant (George Harrison of the Beatles) and media defendants (the Honolulu Advertiser) over a matter of public concern (Harrison's legal battle against neighboring property owners regarding an easement over Harrison's Maui property). 88 Hawaiʻi at 96, 962 P.2d at 355. The Gold court concluded that Harrison's statements in a newspaper article that he was "being raped by all these people" and his "privacy [was] being violated[,]" were "not false and defamatory, but rhetorical hyperbole –- figurative or hyperbolic language that would negate the impression that Harrison was asserting an objective fact about the Plaintiffs." Id. at 97, 101, 962 P.2d at 356, 360.

Here, because Aiona is a private figure suing a non-media defendant over a matter that is apparently not a public concern, Aiona's contention that the Gold test does not apply appears correct. While the Circuit Court may have erred by applying the Gold test to conclude that the statements were protected "rhetorical hyperbole" in COLs 18-20 and 24, the Circuit Court was nevertheless correct as to its ultimate conclusion that Medeiros's statements to Kerr consisted of non-actionable opinion under Williams v. Kanemaru, No. CAAP-11-0000419, 2013 WL 4458887, at *2 (App. Aug. 20, 2013) (SDO),[8] which applied a defamation test from the Restatement of Torts (**Restatement defamation test**). See Prudential Locations, LLC v. Gagnon, 151 Hawaiʻi 136, 146, 509 P.3d 1099, 1109 (2022)

_____

[8] The Circuit Court cited Williams in COL 21.

(affirming summary judgment on different grounds than the trial court).

"Statements of opinions are not automatically immune from defamation actions[.]"  Williams, 2013 WL 4458887, at *2 (citation omitted).  The Restatement defamation test distinguishes between statements of opinion that imply undisclosed defamatory facts (which are actionable), and statements of opinion that are based on disclosed facts known to the recipient (which are not actionable), as follows:

> A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.  Restatement (Second) of Torts § 566 (1977).  A simple expression of opinion based on disclosed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is.  The rationale behind this rule is that when the facts are disclosed, third parties will understand that they are hearing the defendant's interpretation of the facts presented; they are therefore unlikely to construe the statement as insinuating the existence of additional, undisclosed facts.

Id. (emphases added) (cleaned up).

Kerr's declaration related the statements at issue as follows:

> I was told by the Deputy Director of DEM . . . Medeiros there was an investigation in regards to stealing recyclables and that they suspected . . . Aiona to be the leader of this operation.  He then stated that although the investigation didn't have substantial evidence against Mr. Aiona, he believes it to be because [Aiona] "bullied" the other employees into not talking. . . . I was told by [Medeiros] also that [sic] when the WS10 position opened up at Waimea, he stated that he did not want . . . Aiona to get that job. Mr. Medeiros also stated that [Aiona] bullied the other senior Equipment Operators to say "no" to call backs so [Aiona] can get all of the overtime.  When I asked why he believed that, he stated that [Aiona] was like the "modern day mafia" and whatever hold [Aiona] had on the other guys is why they are afraid to confront [Aiona] or speak up against him.

In Kerr's deposition, Aiona's counsel inquired about the circumstances under which Medeiros expressed his opinions that Aiona had "bullied" other employees and that he (Medeiros) did not want Aiona to get the job, as follows:

> Q.    [(BY AIONA'S COUNSEL)] Did [Medeiros] say anything else about who [Aiona] bullied or how he was bullying people?
>
> A.    [(BY KERR)] No.  I can't remember that.  The only thing I do remember, when it came to that, was what I got from it -- I should say it that way.  <u>What I got from it was [Aiona] was a well-known person in that area, and because of his stronger attitude, I guess, or whatever, and the people that he knew, a lot of the times the impression I got was he got his way because of that</u>.
>
> . . . .
>
> Q.    And [Medeiros] specifically told you he wanted to make sure my client would not get the job?
>
> A.    He -- when we were speaking, I remembered that statement.  So what [Medeiros] had said, "Ah, it's going to be -- it's going to be stressful" or "It's going to be" -- I can't remember the word.  He gave me the impression that he didn't want [Aiona] to get the job because it's going to be [Aiona] ruling the Waimea baseyard. . . . He gave me the impression that if . . . Aiona got the supervisory position, he will then control the other employees in that baseyard more so than he did then.

(Emphasis added.)  When Kerr asked Medeiros why he had those opinions, Medeiros responded that Aiona was "like the 'modern day mafia[,]'" as follows:

> [(BY KERR)] And that's when I asked [Medeiros], "What are you talking about?"  And then that leads into the next statement that I made, and that's the reason why I made it, "he stated that [Aiona] was like the 'modern day mafia.'"
>
> And so I was like, "Well, what do you mean by that?"  And then through our conversation, [Medeiros] just explained to me that <u>[Aiona] was a very popular guy, his family name is a very big name here in Hawaii and that, you know, sometimes you get what you want</u>.

(Emphasis added.)

11

Under the Restatement defamation test, Medeiros's statements to Kerr were in the form of opinions that Aiona had "bullied" or controlled other employees and was like "the modern day mafia" based on the following facts that he disclosed to Kerr:  Aiona was well-known in the area, had a "stronger attitude," knew a lot of people, was "very popular," and his "family name [was] a very big name here in Hawaii."  See Williams, 2013 WL 4458887, at *2.  Assuming arguendo Medeiros's opinions were derogatory, the evidence reflects that they were "based on disclosed nondefamatory facts," which do not constitute actionable defamation under the Restatement defamation test, as a matter of law.  See id.; Fernandes, 65 Haw. at 228, 649 P.2d at 1147.

Accordingly, while the Circuit Court erred in its analysis in COLs 18-22 and 24-27 to the extent it relied on "rhetorical hyperbole" under the Gold test for media defendants, it did not err in its citation to the Restatement defamation test set forth in COL 23, and its ultimate conclusion that Medeiros's statements to Kerr were non-actionable opinion.  See Prudential Locations, LLC, 151 Hawaiʻi at 146, 509 P.3d at 1109.

> **There was no admissible evidence of publication by County employees.**

Aiona contends that the County "allowed information to be published to non-County employees, that [Aiona]'s job was in jeopardy including being terminated."  Aiona argues that Appellees "had a legal duty not to leak any information" about "the nature of the internal investigation, the criminal investigation or . . . the consequences" of the alleged theft investigation.  Appellees argue that Aiona "submitted no evidence reasonably inferring [Appellees] were responsible for

spreading [the] false and defamatory information to unprivileged parties."

The record reflects that Aiona would regularly meet a social group at Burger King (**Burger King group**); and that during one of the meet-ups, it was rumored that "Aiona's job was at jeopardy as he was accused of stealing HI-5 recyclables," and that "Aiona might get terminated from his position[.]"  None of the witnesses from the Burger King group, Michael Happy Hanohano (**Hanohano**), Edwin Akana, Jr. (**Akana**), and Joseph Kealoha (**Kealoha**), testified that the statement came from Medeiros or any other County employee.  Hanohano testified that he heard of the theft allegations through Aiona.  Akana testified that he could not remember who made the statement.  Kealoha testified that Hanohano made the statement, but Hanohano was not then employed by the County.  Thus, the Circuit Court did not err in concluding in COLs 30 and 31 that there was a "lack of admissible evidence about the source of the rumor preclud[ing] [Aiona]'s defamation claim."  See Bhakta, 109 Hawai'i at 208, 124 P.3d at 953.

In addition, Aiona wrongly argues that because "Hanohano knew about the investigation, then the County failed in its legal duty [not to disclose] under the doctrine of *res ipsa loquitur*."  A plaintiff asserting res ipsa loquitur must establish that:  (1) the occurrence "must be one which ordinarily does not occur in the absence of someone's negligence"; (2) the occurrence "must be caused by an agency or instrumentality within the exclusive control of the defendant"; and (3) the occurrence "must not have been due to any voluntary action or contribution on the part of the plaintiff."  Carlos v. MTL, Inc., 77 Hawai'i 269, 277-78, 883 P.2d 691, 699-700 (App. 1994) (citation omitted).  Here, the investigation of the HI-5

theft included agencies outside of the County's control.  Res ipsa loquitur does not apply.

We conclude that the Circuit Court did not err in granting the MSJ.  See Bhakta, 109 Hawaiʻi at 207, 124 P.3d at 952.  Because we affirm the Circuit Court's Order Granting MSJ rejecting the defamation claims, we need not address Aiona's remaining arguments regarding qualified privilege and proof of damages.

For the foregoing reasons, we affirm the (1) May 25, 2021 Order Granting MSJ; and (2) July 7, 2021 "Final Judgment," both filed and entered by the Circuit Court of the Third Circuit.

DATED:  Honolulu, Hawaiʻi, February 27, 2024.

On the briefs:

Ted H.S. Hong,
for Plaintiff-Appellant.

Lerisa L. Heroldt,
Deputy Corporation Counsel,
for Defendants-Appellees.

/s/ Clyde J. Wadsworth
Presiding Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge